*352 Judge EFFRON
delivered the opinion of the Court.
At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to her pleas, of possession, use, and distribution (three specifications) of marijuana and acquitted of possession with intent to distribute and distribution of mushrooms (psilocybin), in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). She was sentenced to a bad-conduct discharge, confinement for 15 months, total forfeitures, and reduction to the lowest enlisted grade. The pretrial agreement between Appellant and the convening authority limited the period of confinement to 12 months. The convening authority reduced the period of confinement to nine months and approved the balance of the sentence^ The Court of Criminal Appeals affirmed in an unpublished opinion.
On Appellant’s petition, we granted review of the following issues:
I. WHETHER APPELLANT SUFFERED CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT AND ARTICLE 55, UCMJ, 10 U.S.C. § 855 (2000), WHEN A GUARD AT THE MANNHEIM REGIONAL CONFINEMENT FACILITY ENGAGED IN CONDUCT INCOMPATIBLE “WITH THE EVOLVING STANDARDS OF DECENCY THAT MARK THE PROGRESS OF A MATURING SOCIETY” BY REPEATEDLY SEXUALLY ASSAULTING AND HARASSING HER.
II. WHETHER THE STAFF JUDGE ADVOCATE’S POST-TRIAL RECOMMENDATION PREJUDICED APPELLANT BY IGNORING DEFENSE COUNSEL’S ASSERTION OF LEGAL ERROR.
For the reasons set forth below, we affirm the findings, but set aside the sentence and remand to the Court of Criminal Appeals.
I. BACKGROUND
After the sentence to confinement was adjudged by the court-martial, Appellant was confined at the United States Army Confinement Facility, Europe, located in Mannheim, Germany. Defense counsel’s clemency petition provided the following description of actions taken against Appellant by a petty officer first class (E-6) serving as a Guard Commander during her post-trial confinement:
Ann Brennan was the victim of an indecent assault and sexual harassment by one of the male guards during her first two months of confinement. Ann Brennan was sent to Mannheim Confinement Facility (MCF) on 15 May 2000. In late May 2000, [a] Guard Commander, MCF, attempted to engage in sexual activity with Ann Brennan during his shift. [The Guard Commander] promised Ann Brennan special privileges in exchange for sex. Furthermore, he placed his hands on her buttocks, breasts and vaginal area on numerous occasions. He also exposed his penis to her and tried to force her to touch it with her hand.
... CID titled [the Guard Commander] for indecently assaulting Ann Brennan, another inmate and one guard. The investigation is still outstanding....
... MAJ Steven Lynch, Commander of the MCF, stated that Ann Brennan was instrumental in identifying [the Guard Commander’s] criminal behavior and aiding CID in the investigation. He stated that her cooperation may very well lead to a court-martial conviction for [the Guard Commander]. It took a great deal of courage for Ann Brennan to come forward and report this conduct. For her courage in reporting it and for suffering an attack at the hands of a guard, Ann Brennan deserves clemency. Additionally, MAJ Lynch stated that Ann Brennan has been a model inmate[.]
Although the staff judge advocate’s post-trial recommendation discussed various aspects of Appellant’s request for clemency, the staff judge advocate did not comment upon, or otherwise draw the convening authority’s attention to, Appellant’s specific request for clemency based upon the abusive conditions of her post-trial confinement.
*353 In a subsequent statement filed before the Court of Criminal Appeals, Appellant stated:
I was sexually attacked by [the Guard Commander] on many occasions. His attacks were almost daily and range from verbal to physical.
He ... would come in and look at me when I was on the toilet.
Every day I can remember that he was there, he at least propositioned me and told me what he wanted to do to me. His propositions were asking for sex in return for special treatment and goodies, then followed by a comment like “you’ll give it to me anyway or I will take it”. When he told me what he wanted to do to me it was very vulgar and perverted. He said things like “I’ll F* * * you till you can’t scream anymore, then I’ll f* * * you up your a* * to get you screaming again.”
He was physical many times. He would do things as little as slapping my butt when I was on a treadmill or just walking by. He groped me wherever he could whenever he could. These events did not last long because of my resistance, but they got worse. There was a specific event that was the worst. When he told me that he was going to take a verbal statement about something that happened to another inmate, he took me into a counselor’s room on the weekend locked the door and trapped me in the corner. He rubbed his body up and down my side while rubbing his hand all over me and grabbing my private area between my legs, he licked the side of my face and tried to kiss me. I struggled to get away and finally was able to make a break for the door. While I was unlocking the door and opening it, he stopped the door, grabbed my hand and was pulling it toward him, saying something to the effect of “just touch it”, I looked at him as I pulled my hand away and noticed that he was pulling it toward his penis that he had exposed out of his pants. I then got the door open enough to run out and back to my cell.
II. CRUEL AND UNUSUAL PUNISHMENT
The Eighth Amendment to the Constitution prohibits the infliction of “cruel and unusual punishment.” Article 55 states that various specified punishments, as well as “any other cruel or unusual punishment, may not be adjudged by a court-martial or inflicted upon any person subject to [the UCMJ].” We have observed that the Supreme Court’s interpretation of the Eighth Amendment applies to a claim under Article 55 that confinement was administered in a cruel or unusual manner, subject to exceptions not pertinent to the present appeal. United States v. White, 54 M.J. 469, 473 (C.A.A.F.2001).
Under the Supreme Court’s jurisprudence, misconduct by prison officials does not constitute cruel and unusual punishment unless it falls within the Eighth Amendment standards established by the Court. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In Estelle, the Supreme Court held that the Eighth Amendment prohibits “punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society ... or which involve the unnecessary and wanton infliction of pain.” 429 U.S. at 102-03, 97 S.Ct. 285 (citations and internal quotation marks omitted).
In the context of a challenge to the conditions of confinement, the Court in Farmer observed that the Eighth Amendment “does not mandate comfortable prisons” but “neither does it permit inhumane ones.” 511 U.S. at 832,114 S.Ct. 1970 (internal quotations omitted). The Court identified two elements of an Eighth Amendment claim concerning confinement conditions: (1) an objective test — whether there is a sufficiently serious act or omission that has produced a denial of necessities; and (2) a subjective test — whether the state of mind of the prison official demonstrates deliberate indifference to inmate health or safety. Id. at *354 834, 114 S.Ct. 1970. Applying the Supreme Court’s test, numerous federal courts, including this Court, have held that to sustain an Eighth Amendment violation, there must be a showing that the misconduct by prison officials produced injury accompanied by physical or psychological pain. See United States v. Erby, 54 M.J. 476, 478 (C.A.A.F. 2001); White, 54 M.J. at 474; United States v. Sanchez, 53 M.J. 393, 395-96 (C.A.A.F. 2000).
The Court in Hudson emphasized that the proof required to establish the unnecessary and wanton infliction of pain “varies according to the nature of the alleged constitutional violation.” 503 U.S. at 5, 112 S.Ct. 995 (citing Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). The Court added:
What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue, for two reasons. First, “[t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should ... be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.” Whitley, [475 U.S.], at 320, 106 S.Ct. 1078. Second, the Eighth Amendment’s prohibition of cruel and unusual punishments “draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,” and so admits of few absolute limitations. Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)(quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)(plurality opinion)).
Id. at 8, 112 S.Ct. 995.
III. DISCUSSION
The Government, in the course of this appeal, has not contested Appellant’s statement and has characterized the Guard Commander’s conduct as “deplorable.” The Government contends, however, that Appellant has failed to show that the Guard Commander’s actions violated the Eighth Amendment because Appellant has not shown that she suffered physical or psychological pain. As a general matter, verbal harassment, even when accompanied by physical contact, is insufficient without evidence of physical or psychological injury to prove that the misconduct constitutes an Eighth Amendment violation. See, e.g., Sanchez, 53 M.J. at 394-96; Boddie v. Schnieder, 105 F.3d 857 (2d Cir.1997). The present case, however, involves more than occasional unwelcome advances and incidental contact. Virtually every day over a two-month period, the Guard Commander abused his position as a prison official to mistreat Appellant, a prisoner subject to his command and control. At one point, using graphic language, he brutally threatened her with anal sodomy. On another occasion, he isolated her in a locked room, trapped her in a corner, and physically assaulted her. This case involves a Guard Commander whose raw exercise of power over a prisoner transformed her lawful period of confinement into a different form of punishment by imposing repeated physical and verbal abuse over a two-month period. Under these circumstances, expert testimony is not needed to demonstrate that the harm inflicted upon Appellant was sufficiently injurious to establish that she was subjected to punishment in violation of Article 55 by the Guard Commander.
The Government also contends that the evidence does not demonstrate that the confinement facility official in question acted with a sufficiently culpable state of mind. In the present case, the Guard Commander engaged in persistent sexual harassment, threatened to forcibly sodomize Appellant, and indecently assaulted her. His culpability is clearly established by his conduct, which is wholly unrelated to any legitimate penological or disciplinary purpose in a confinement facility.
The Government further argues that the pertinent mental state is that of the supervisors, who acted promptly on Appellant’s complaints, thereby disproving any claim of deliberate indifference. This case, however, involves a Guard Commander who exploited his considerable discretionary authority to abuse Appellant over an extended period of *355 time. Regardless of the impact of the chain of command’s reaction on the civil liability, if any, of supervisory officials, see Hudson, 503 U.S. at 12, 112 S.Ct. 995, White, 54 M.J. at 472, the response of supervisors does not preclude a finding that the Guard Commander violated Appellant’s Eighth Amendment rights. See, e.g., Barney v. Pulsipher, 143 F.3d 1299 (10th Cir.1998); Carrigan v. Delaware, 957 F.Supp. 1376 (D.Del.1997). In that regard, we note that if the Guard Commander knowingly had tolerated mistreatment of Appellant in the same manner by an inmate, he would have violated Appellant’s Eighth Amendment protection against cruel and unusual punishment. See Smith v. Chief Executive Officer, No. 00 C.V. 2521, 2001 WL 1035136, at *5, 2001 U.S. Dist. LEXIS 13887, at *16-17 (S.D.N.Y. Sep. 7, 2001)(citing Farmer, 511 U.S. at 834, 114 S.Ct. 1970). Just as Article 55 does not permit a Guard Commander to knowingly tolerate abuse of a prisoner by another inmate, Article 55 does not permit a Guard Commander to inflict the same abuse on the inmate.
Finally, the Government contends that even if Appellant suffered cruel and unusual punishment, the problem was adequately addressed because the convening authority reduced her confinement from the 12 month period, as required by the pretrial agreement, to nine months. The record, however, does not demonstrate that the convening authority’s action was undertaken to provide corrective action for the mistreatment of Appellant during confinement. Defense counsel’s request for clemency identified seven separate grounds for clemency, only one of which involved the abusive conditions of her confinement. The staff judge advocate’s recommendation to the convening authority discussed various aspects of the defense request for clemency, but contained no reference to the conditions of post-trial confinement. Under these circumstances, it would be inappropriate to conclude that the convening authority took corrective action to remedy Appellant’s mistreatment in post-trial confinement.
With respect to Issue I, we conclude that Appellant was subjected to illegal post-trial punishment in violation of Article 55. Issue II — which asks whether the staff judge advocate’s recommendation should have expressly addressed this legal error — is moot in view of our holding on Issue I.
Because the case in its present posture involves correction of a legal error rather than the provision of clemency, corrective action may be taken by the Court of Criminal Appeals. The Court of Criminal Appeals has discretion either to take corrective action with respect to the Article 55 violation, or remand the case for such action by a convening authority.
IV. DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further proceedings consistent with this opinion.