# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39306**

————————————

**UNITED STATES**
*Appellee*

**v.**

**James A. MCGRIFF, II**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 December 2018

————————————

*Military Judge:* James E. Key III.

*Approved sentence:* Dishonorable discharge, confinement for 12 years, and reduction to E-1. Sentence adjudged 23 February 2017 by GCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Nicole P. Wishart, USAF; Major Rebecca A. Magnone, USAF; Major Tyler B. Musselman, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, consistent with his pleas pursuant to a pretrial agreement, of one specification of committing sexual abuse of a child under the age of 16 years,

one specification of committing sodomy on divers occasions with a child under the age of 12 years, and one specification of enticing a child under the age of 18 years to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of Articles 120b, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 925, 934. The military judge sentenced Appellant to a dishonorable discharge, confinement for 12 years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence but waived mandatory forfeiture of pay and allowances for a period of six months for the benefit of Appellant's spouse and dependent children.

Appellant raises a single issue on appeal: whether he is entitled to sentence relief because the conditions of his post-trial confinement either were cruel and unusual in violation of the Eighth Amendment[1] and Article 55, UCMJ, 10 U.S.C. § 855, or rendered his sentence inappropriately severe. In addition, we address a facially unreasonable delay in the post-trial processing of Appellant's case. We find Appellant was subjected to violations of the Eighth Amendment and Article 55 that warrant sentence relief. We affirm the findings and only so much of the sentence as provides for a dishonorable discharge, confinement for 11 years, and reduction to the grade of E-1.

## I. BACKGROUND

Appellant was stationed at Joint Base Lewis-McChord, Washington, between December 2008 and August 2011. Appellant began dating MS in early 2009, and the two began living together around the end of 2009. MS's niece, JN, initially lived in the same house. Over the course of approximately 18 months, beginning when JN was eight years old, Appellant orally sodomized JN on between five and seven occasions. Appellant instructed JN not to tell anyone about this abuse, and she did not.

Appellant separated from active duty in late August 2011. Appellant had no contact with JN from the end of August 2011 until late January 2015. Appellant joined the Air Force Reserve on 10 February 2013. On 28 January 2015, Appellant entered active duty status and was stationed at Keesler Air Force Base (AFB), Mississippi.

On 31 January 2015, Appellant contacted JN via Facebook. Appellant continued a conversation with JN, who was 13 years old at the time, between 31 January 2015 and 12 March 2015 via the Facebook instant messaging service. In the course of this correspondence Appellant sent JN two photos fea-

---

[1] U.S. CONST. amend. VIII.

turing his fully-exposed genitalia. Appellant also requested JN send him photographs of herself naked. This correspondence ended after JN's mother and aunt discovered these messages.

After trial, Appellant was transferred to the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas, to serve his term of confinement. After he arrived at the USDB, Appellant was assigned to a work detail in the prison's dining facility. One of Appellant's supervisors on the detail was Staff Sergeant (SSG) TH, a male Soldier assigned to the USDB staff. SSG TH and Appellant discovered they had much in common with one another, including being members of the same church organization, and they developed a friendly relationship. When SSG TH learned Appellant liked to write poems and songs, SSG TH procured a composition notebook for Appellant in violation of a lawful general regulation.

As time passed, SSG TH and Appellant began telling each other sexually-oriented jokes. Beginning in approximately May 2017, SSG TH and Appellant engaged in several sexual encounters during Appellant's work details in isolated locations away from other staff and incarcerated members. Specifically, Appellant and SSG TH performed oral sex on each other multiple times, Appellant anally penetrated SSG TH once, and SSG TH attempted to anally penetrate Appellant once. Appellant later informed investigators there were a total of between six and eight such encounters over the course of approximately two months. During this period, SSG TH provided another composition notebook to Appellant. In addition, SSG TH provided Appellant a particular item of underwear that Appellant wore at SSG TH's request. Appellant eventually threw away the underwear because he was afraid it would be discovered during a cell inspection. Appellant later told investigators that eventually he could not "fake" it anymore; he became irritable, angry, and distant toward SSG TH. At about the same time, Appellant began to experience pain when urinating and he developed an unusual discharge from his penis. Appellant sought treatment at the USDB medical facility and tested positive for gonorrhea. Appellant thereafter reported SSG TH's behavior, the United States Army Criminal Investigation Command (CID) promptly began an investigation, and Appellant was assigned a Special Victims' Counsel (SVC) by the Army.

CID investigators initially interviewed Appellant on 28 July 2017. The CID subsequently interviewed SSG TH multiple times. Initially, SSG TH denied engaging in any sexual activity with Appellant or giving Appellant anything more than a piece of gum, although he did admit to having had gonorrhea in the past. However, in a subsequent interview SSG TH admitted to engaging in oral and anal sex with Appellant substantially similar to what Appellant had described, although SSG TH portrayed Appellant as the more

aggressive partner in the relationship. SSG TH admitted to giving Appellant two notebooks and underwear. SSG TH stated the sexual activity was all consensual and no force was involved.

Unbeknownst to Appellant, SSG TH had previously been diagnosed as positive for the human immunodeficiency virus (HIV). SSG TH had been ordered in writing to disclose his HIV-positive status to any potential sexual partners and to wear a condom prior to engaging in any form of sexual intercourse. SSG TH did not disclose to Appellant that he was HIV-positive and did not wear a condom during his sexual activity with Appellant.

On 20 April 2018, SSG TH was convicted by a general court-martial, in accordance with his pleas, of the following offenses: two specifications of willful disobedience of an order for his failure to disclose his HIV-positive status and his failure to use a condom, two specifications of violating a lawful general regulation by providing a composition notebook and underwear to Appellant, one specification of making a false official statement, one specification of simple assault by exposing Appellant to HIV, and one specification of engaging in sexual acts with a prisoner in violation of 18 U.S.C. § 2243, in violation of Articles 90, 92, 107, 128, and 134, UCMJ, 10 U.S.C. §§ 890, 892, 907, 928, 934. A military judge sentenced SSG TH to a bad-conduct discharge, confinement for three years, and reduction to the grade of E-4.

## II. DISCUSSION

### A. Conditions of Post-Trial Confinement

#### 1. Law

We review de novo whether an appellant has been subjected to impermissible conditions of post-trial confinement in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55 . . . is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the

> prisoner-grievance system . . . and that he has petitioned for re-
> lief under Article 138, UCMJ, 10 USC § 938 [2000].”

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

**2. Analysis**

Appellant contends he was sexually assaulted by SSG TH in violation of the Eighth Amendment and Article 55, UCMJ, prohibitions on cruel and unusual punishment, and therefore this court should set aside the remainder of his term of confinement in order to afford him "meaningful relief." We are not persuaded that Appellant was sexually assaulted. However, applying the three-part test articulated by the Court of Appeals for the Armed Forces (CAAF) in *Lovett*, we do find SSG TH subjected Appellant to treatment in violation of the Eighth Amendment and Article 55 that warrants a one-year reduction in his term of confinement.

### *a. Requirement for Post-Trial Evidentiary Hearing*

As an initial matter, we must determine whether a post-trial evidentiary hearing is required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). On 6 March 2018, Appellant submitted to this court an undated declaration asserting, *inter alia*, that he had been "sexually harassed and assaulted" by SSG TH, who "subject[ed] [Appellant] to forcible sodomy (oral and anal sex)." Appellant further stated SSG TH "subject[ed] [Appellant] to humiliation by forcing [Appellant] to wear female underwear when [Appellant] was around him." Furthermore, Appellant alleged SSG TH "told [Appellant] that if [Appellant] ever told anyone or did not continue allowing him to sexually assault [Appellant] that he would get [Appellant] in trouble with the disciplinary action board and affect [Appellant's] status with the parole board." Appellant also submitted an undated declaration from his SVC, which generally described the status of the then-pending prosecution of SSG TH and made a reference to SSG TH's "repeated sexual assaults" on Appellant, as well as a redacted charge sheet and, eventually, a stipulation of fact from SSG TH's 20 April 2018 court-martial. In response, the Government submitted several matters for the court's consideration, including: a videorecording of Appellant's interview by CID agents regarding SSG TH's misconduct; portions of the CID report of investigation of SSG TH, including a summary of Appellant's interview and summaries and copies of statements by SSG TH; and the report of result of trial from SSG TH's trial.

In *Ginn*, the CAAF stated "a post-trial evidentiary hearing . . . is not required in any case simply because an affidavit is submitted by an appellant." 47 M.J. at 248. The CAAF identified five circumstances that obviate the need

for a factfinding hearing based on an appellant's post-trial declaration; those pertinent to the instant case include the following:

> [I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

> . . . [I]f the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

> . . . [I]f the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

*Id.* Applying these considerations to the instant case, we conclude a factfinding hearing is not required.

We find the record compellingly demonstrates the improbability of Appellant's claims that SSG TH threatened to adversely influence the USDB disciplinary control board or the parole board against Appellant. Appellant raised no such concerns in his recorded interview or summarized statement to the CID. On the contrary, Appellant's statements to the CID indicate the sexual relationship grew out of friendly interactions between himself and SSG TH. Appellant's interview further indicates the sexual relationship ended when Appellant decided to end it. Moreover, Appellant was not dissuaded from reporting SSG TH to the CID once Appellant was diagnosed with gonorrhea. For his part, SSG TH denied coercing Appellant, and he neither pleaded guilty to nor was prosecuted for any nonconsensual sexual offense.[2]

---

[2] We acknowledge that 18 U.S.C. § 2243, which SSG TH was convicted of violating, is entitled "Sexual abuse of a minor or ward." However, with respect to sexual acts involving incarcerated adults, such as Appellant, lack of consent is not an element of the offense, nor is the presence of consent a defense. The statute provides, in pertinent part:

> Whoever . . . in a Federal prison . . . knowingly engages in a sexual act with another person who is--

> (1) in official detention; and

> (2) under the custodial, supervisory, or disciplinary authority of the person so engaging;

*(Footnote continues on next page)*

Relatedly, we find Appellant's claims that he was sexually assaulted and forcibly sodomized are "conclusory" interpretations of the relationship rather than assertions of "specific facts." *See id.* Appellant avers in his assignment of error that the sexual relationship "could never be consensual" because of the inequality of power between Appellant, an incarcerated person, and SSG TH, a USDB staff member. Whether the evidence indicates Appellant in fact was assaulted sexually or otherwise will be explored in the analysis below, but in light of the record before us Appellant's conclusory assertion does not require further factfinding.

Finally, the Government does not contest that Appellant and SSG TH engaged in anal and oral intercourse or that Appellant wore certain underwear SSG TH provided to him at SSG TH's request. Thus these uncontroverted assertions also do not require further factfinding.

### b. Cruel and Unusual Punishment

Next, we apply the test set forth in *Lovett* to determine whether Appellant was subjected to cruel and unusual punishment in violation of the Eighth Amendment and Article 55. 63 M.J. at 215. The burden is on Appellant. *Id.*

#### i) Serious Act or Omission

First, we must assess whether Appellant was subjected to an "objectively, sufficiently serious act or omission resulting in the denial of necessities." *Id.* Appellant argues this requirement is satisfied because SSG TH sexually assaulted him; because SSG TH never informed Appellant he was HIV-positive or used a condom as SSG TH had been ordered to do; and because SSG TH infected Appellant with gonorrhea, another sexually-transmitted disease SSG TH failed to warn Appellant about. Appellant contends SSG TH's actions were cruel and unusual and "fell far below the standard of care" Appellant was entitled to as a person incarcerated in the USDB.

We are not persuaded that SSG TH sexually assaulted Appellant. Appellant takes the position that the sexual relationship could never be consensual because of SSG TH's position of authority over Appellant. Although there appears to be little precedent in the military appellate courts for this situation, multiple federal circuit courts have concluded that sexual relations between a

---

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years or both.

18 U.S.C. § 2243(b). Thus the statute criminalizes sexual acts between a person incarcerated in a federal prison, such as Appellant, and his supervisor, such as SSG TH, without regard to whether the prisoner consented.

guard and an incarcerated person are not per se nonconsensual for purposes of alleged Eighth Amendment violations. *See, e.g.*, *Graham v. Sheriff of Logan County*, 741 F.3d 1118, 1125–26 (10th Cir. 2013); *Wood v. Beauclair*, 692 F.3d 1041, 1048–49 (9th Cir. 2012); *Hall v. Beavin*, 202 F.3d 268 (6th Cir. 1999) (mem.); *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997). We find this reasoning persuasive. We recognize the inherent inequality of position and power between an incarcerated person and a member of the prison staff and the high potential for coercion in sexual relationships between the two. Nevertheless, we believe a case-by-case analysis of circumstances, bearing in mind the inequalities, is appropriate. An incarcerated person who willingly engages in sexual intercourse with a prison staff member has not thereby been subjected to an "objectively, sufficiently serious act or omission resulting in the denial of necessities." *Lovett*, 63 M.J. at 215. Unlike a child or a person rendered incapable of consenting by a drug or mental disease, an unimpaired, incarcerated adult is capable of making a voluntary decision to engage in consensual sexual activity. *See Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶¶ 45.a.(b)(3), 45b.a. As the Eighth Circuit put it, "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment." *Freitas*, 109 F.3d at 1339.

Therefore, the question becomes whether Appellant in fact consented to the activity. The record before us indicates that he did. Appellant made no mention of threats, force, or other coercion by SSG TH in his interview with the CID. On the contrary, he describes a friendly relationship that evolved into a sexual one. Despite SSG TH's initial denial of any sexual contact with Appellant, SSG TH's subsequent statement to the CID was largely consistent with the account Appellant provided and he denied any nonconsensual activity. Taken together, their statements to the CID indicate the sexual relationship began when Appellant consented to it and ended when Appellant did not want it to continue. We again note SSG TH was not prosecuted for any nonconsensual sexual offense.

However, Appellant did not consent to his exposure to HIV. SSG TH was convicted of committing an assault against Appellant in violation of Article 128 by exposing Appellant to HIV. In addition, although not named in the specifications, Appellant was effectively the victim of SSG TH's convictions for failing to obey lawful orders to warn sexual partners of his HIV-positive status and to wear a condom during sexual activity in violation of Article 90. One might argue that exposure to HIV or other sexually-transmitted diseases (like gonorrhea) is a foreseeable consequence of engaging in unprotected oral and anal intercourse in prison or elsewhere. Nevertheless, we are persuaded that, under the facts of this case, for a member of the USDB staff to deliberately compromise the health and safety of a person incarcerated in the USDB

by subjecting him to such criminal acts that exposed Appellant to the risk of HIV infection and the actual transmission of gonorrhea was a "sufficiently serious act or omission resulting in the denial of necessities" to meet the first prong of the *Lovett* test. 63 M.J. at 215.[3]

### ii) Culpable State of Mind

Next, we consider whether Appellant has demonstrated "a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety." *Id.* In this case, we focus on SSG TH's state of mind rather than that of the USDB administration more generally. In general, prison officials demonstrate a sufficiently culpable state of mind for Eighth Amendment purposes if they are deliberately indifferent to a denial of necessities. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). It is evident the USDB authorities and the Government more generally were anything but indifferent to SSG TH's misconduct once Appellant reported it. Appellant was appointed an Army SVC to represent his interests as a victim; the CID investigated the matter as a serious crime; and SSG TH was removed from Appellant's presence, tried by a general court-martial, and received a substantial sentence.

However, the CAAF has held a single guard may violate a prisoner's Eighth Amendment and Article 55 rights, even if higher officials respond appropriately once they become aware. *See United States v. Brennan*, 58 M.J. 351, 355 (C.A.A.F. 2003). *Brennan* presented an analogous situation in which a particular male guard commander "engaged in persistent sexual harassment, threatened to forcibly sodomize [the female] [a]ppellant, and indecently assaulted her" over a period of approximately two months. *Id.* at 354. At the time of Brennan's clemency submission, the guard was under criminal investigation by the CID for alleged offenses against Brennan and two other individuals. *Id.* at 352. The Government argued that "the pertinent mental state is that of the supervisors, who acted promptly on [a]ppellant's complaints, thereby disproving any claim of deliberate indifference." *Id.* at 354. The CAAF disagreed, stating: "Regardless of the impact of the chain of command's reaction on the civil liability, if any, of supervisory officials . . . the response of supervisors does not preclude a finding that the Guard Commander violated [Brennan's] Eighth Amendment rights." *Id.* at 355 (citations omitted); *see also United States v. Bright*, 63 M.J. 683, 686 (A. Ct. Crim. App. 2006) (en banc)

---

[3] We need not and do not decide whether SSG TH's transmission of gonorrhea to Appellant after failing to warn Appellant would, alone, constitute a violation of the Eighth Amendment or Article 55.

(finding Eighth Amendment and Article 55 violations by an individual guard who used excessive force during frisk searches even though the appellant did not report until months after the fact and prison authorities were unaware at the time).

Turning to the culpability of SSG TH's state of mind, we note the parties disagree as to whether the "deliberate indifference" standard applicable to claims based on prison conditions and the denial of medical care or the "malicious and sadistic" standard applicable to claims based on excessive use of force is appropriate in this case. *See Farmer v. Brennan*, 511 U.S. 825, 834–36 (1994); *Wilson*, 501 U.S. at 302–03. The Government asserts "sexual abuse of a prisoner by a guard is generally analyzed as an excessive force claim," citing *United States v. Bruhn*, No. ACM 37291, 2010 CCA LEXIS 124, at \*22 (A.F. Ct. Crim. App. 3 Feb. 2010) (unpub. op.), and *Graham*, 741 F.3d at 1123. However, we find the law more nuanced than the Government portrays it. For example, in *Bruhn* we applied the excessive force standard because only an improper touching of the incarcerated person's shoulder by the guard was substantiated; the alleged sexual harassment was not substantiated. *Bruhn*, unpub. op. at \*22. In addition, the CAAF's opinion in *Brennan* suggests that, where a guard engages in a pattern of sexual harassment, threats of forcible sodomy, and indecent assault, which of course have no legitimate penal purpose, such conduct in itself "clearly establishe[s]" a sufficiently culpable state of mind. 58 M.J. at 354. Thus it would seem that where sexual abuse is established a finding of a sufficiently culpable state of mind would follow almost as a matter of course. *See also Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) ("It is therefore apparent, even without considering exactly what *mens rea* is necessary to show a 'wanton' state of mind for a claim of sexual abuse, that a prison official who sexually abuses a prisoner can be found to have a sufficiently culpable state of mind to violate the prisoner's constitutional rights.").

More importantly, as we have found above, in this case the relevant "acts or omissions" are not sexual harassment and assault but SSG TH's offenses that exposed Appellant to diseases that posed threats to his physical health and safety. The United States Supreme Court has explained that the fundamental issue in an Eighth Amendment claim is whether the offending conduct is "wanton." *Wilson*, 501 U.S. at 302. "[W]antonness does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). The Court's jurisprudence with regard to the heightened culpability requirement in Eighth Amendment claims based on excessive force grew out of its concern that, in emergency situations, prison officials must act in haste and under pressure, balancing important competing interests in prisoner and staff safety. *Id.*

(quoting *Whitley*, 475 U.S. at 320–21) (additional citation omitted). Appellant's case presents no such circumstances. We find the offending conduct at issue here more analogous to Eighth Amendment claims based on conditions of confinement and denial of medical care than claims based on assault by application of excessive force. Accordingly, we find "deliberate indifference" to the offending conduct is the appropriate standard in this case. Because SSG TH himself knowingly perpetrated the offending conduct, which had no legitimate penal purpose, we readily find he possessed a sufficiently wanton and culpable state of mind, and therefore Appellant has satisfied the second prong of the *Lovett* test.

### iii) Exhaustion of Administrative Remedies

Turning to the third prong of the test, the Government argues we should reject Appellant's claim because he has failed to exhaust his administrative remedies. The Government contends Appellant has presented no evidence that he complained of SSG TH's misconduct through the USDB's prisoner grievance system; that he filed a complaint with his chain of command pursuant to Article 138, UCMJ, 10 U.S.C. § 938; or that he raised such an allegation in his clemency submissions to the convening authority dated 12 June 2017 and 10 July 2017. *See Lovett*, 63 M.J. at 215. We are not persuaded by the Government's argument.

Appellant informed CID agents of SSG TH's misconduct when he was interviewed on 28 July 2017 after testing positive for gonorrhea. This fact is significant in multiple respects. Although Appellant alleges his sexual relationship with SSG TH was nonconsensual, as we determined above the conduct violative of the Eighth Amendment in this case involved SSG TH's deliberate exposure of Appellant to sexually-transmitted disease. Appellant was not aware of this until after he tested positive for gonorrhea in late July 2017, which was after the convening authority took action on his court-martial on 13 July 2017. Also, as described above, once Appellant reported SSG TH's misconduct, Army authorities took prompt action that alleviated the offensive conditions by removing SSG TH. Put another way, Appellant did report the misconduct to authorities who were in a position to remedy the situation, and once he did so there was no purpose to further pursuing other administrative remedies. *Cf. United States v. Wise*, 64 M.J. 468, 472–73 (C.A.A.F. 2007) (finding "unusual" circumstances excused the appellant's failure to seek relief for an Article 12, UCMJ, 10 U.S.C. § 912, complaint through the prisoner grievance or Article 138 processes); *United States v. Norman*, No. ACM 37945 (recon), 2014 CCA LEXIS 661, at *21–23 (A.F. Ct. Crim. App. 4 Sep. 2014) (per curiam) (unpub. op.) (citations omitted) (acknowledging this court has not required resort to the prisoner grievance or Article 138 processes in "unusual or egregious circumstances" where the ap-

pellant did raise the issue "with someone connected with the military who would be in the position to relay the problem to an authority capable of remedying the situation"). The CAAF has explained that the exhaustion of remedies requirement serves to "promot[e] resolution of grievances at the lowest possible level . . . [and] to ensure that an adequate record has been developed . . . ." *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997). In this case, both purposes have been served in a robust fashion by the criminal investigation and prosecution of SSG TH.

An additional observation is appropriate here: "Unlike his or her civilian counterpart, the military prisoner is afforded no civil remedy for illegal confinement under 42 U.S.C. §§ 1983 and 1985, or the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671, *et seq.*" *Miller*, 46 M.J. at 250 (citations omitted). To be sure, the prisoner grievance system and Article 138 process, like the criminal complaint to the CID, would be appropriate mechanisms to expose SSG TH's misconduct and remove him from Appellant's presence. However, none of these processes can fulfill this court's role in granting sentence relief, where appropriate, for Eighth Amendment and Article 55 violations. In a system that denies military prisoners civil remedies for such constitutional violations, and in a case such as this where the purpose of the requirement to exhaust administrative remedies has been substantially served, we do not find it appropriate to reject Appellant's claim on the grounds that he did not resort to such administrative remedies. Accordingly, we find "unusual" circumstances that warrant excusing the usual requirement that Appellant file a prisoner grievance and an Article 138 complaint.

### iv) Remedy

Therefore, we find Appellant has met all three requirements of the *Lovett* test, and accordingly we find a violation of his rights under the Eighth Amendment and Article 55. Next we consider what remedy, if any, is appropriate. We do not discount the importance of a prisoner's right not to be subjected to cruel and unusual punishment. However, we also note Appellant consented to a sexual relationship with SSG TH. Appellant contracted gonorrhea from SSG TH, but we have no evidence that Appellant either has been or will in fact become infected with HIV. We have also considered the severity and extent of Appellant's sexual offenses against a child. We conclude that approving only so much of Appellant's sentence as includes a dishonorable discharge, confinement for 11 years, and reduction to the grade of E-1 is a sufficient remedy.

### v) Sentence Appropriateness

We recognize that in accordance with our broad authority and mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to approve only so much of the

sentence as we find appropriate in law and fact, we may grant sentence relief due to an appellant's post-trial treatment even in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *Gay*, 74 M.J. at 742–43; *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). However, the authority to grant such relief is not unfettered and must be based on a "legal error or deficiency," albeit one that does not rise to the level of an Eighth Amendment or Article 55 violation. *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2016). This court has previously commented that "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted).

As explained above, we *do* find a violation of the Eighth Amendment and Article 55 in this case that warrants relief. However, even if we did not, we would exercise our authority under Article 66(c) to grant the same relief on an alternative basis as a matter of sentence appropriateness. The CID investigation and court-martial conviction of SSG TH are an ample testament to the "legal error or deficiency" in the execution of Appellant's sentence to post-trial confinement at the USDB, and Appellant was harmed thereby. The particular facts of this case present one of those "very rare circumstances" we anticipated in *Ferrando* in which sentence relief would be appropriate, even if the circumstances did not rise to the level of cruel or unusual punishment forbidden by the Eighth Amendment and Article 55.

## B. Post-Trial Delay

Although not raised as an assignment of error, we note Appellant was sentenced on 23 February 2017 but the convening authority did not take action until 13 July 2017, 140 days later. In addition, the record of trial was not docketed with this court until 15 August 2017, 33 days after convening authority action. These periods exceed the respective 120-day and 30-day thresholds for presumptively unreasonable post-trial delays established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we consider the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

Where, as here, an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In response to a show cause order from this court, the Government submitted a declaration from the current wing staff judge advocate at Keesler AFB, who was not the same staff judge advocate present when Appellant was

tried there. The Government characterizes the delays as "slight" and points to such contributing factors as the trial defense counsel being on sick leave for two weeks, which delayed her review of the transcript; the Defense's request of a delay of over one month to submit additional clemency matters; Appellant's multiple clemency submissions; and delays resulting from the need to serve and to obtain receipts of service from Appellant, who was confined at the USDB. The Government's explanations are not wholly convincing. For example, the record of trial in this case consists of only three volumes total with a modest 184 pages of transcript. The court reporter completed the transcript on 6 March 2017, less than two weeks after trial, and the military judge authenticated the record on 22 March 2017. There is little justification for the delay between that time and 8 May 2017, when the record was sent to the convening authority's staff judge advocate, also located at Keesler AFB. Nevertheless, Appellant has alleged no prejudice and we perceive none; nor did Appellant specifically demand speedy post-trial processing. Considering the relevant factors together, we cannot say the delay was so egregious as to impugn the fairness and integrity of the military justice system.

Again recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 744, we conclude it is not.

### III. Conclusion

The approved findings and only so much of the sentence as provides for a dishonorable discharge, confinement for 11 years, and reduction to the grade of E-1 are **AFFIRMED**.[4] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[4] The court-martial order omits the "II" following Appellant's surname. We direct the publication of a corrected order to remedy this error.