# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class DONALD P. LAVIOLET**
**United States Army, Appellant**

ARMY 20190235

Headquarters, United States Army Maneuver Center of Excellence
Wendy P. Daknis, Military Judge
Colonel Jackie L. Thompson, Jr., Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Marc J. Emond, JA (on brief).

4 September 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

Appellant asks this court to disapprove his punitive discharge because mistreatment by a prison guard violated his rights against cruel and unusual punishment under the Eight Amendment to the U.S. Constitution and Article 55, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 855. We hold that, while appellant endured inexcusable behavior during his confinement, the mistreatment appellant suffered is insufficient to establish conduct amounting to cruel and unusual punishment.

## I. BACKGROUND

We review this case under Article 66, UCMJ. On appeal, appellant asserts that he suffered cruel and unusual punishment, in violation of the Eighth Amendment and Article 55, UCMJ, as a result of inappropriate verbal and non-verbal communication and use of excessive force during frisk searches by a prison guard while serving his sentence to confinement at Naval Consolidated Brig Charleston.[1]

On 18 April 2019, appellant was transferred to Naval Consolidated Brig Charleston to serve his term of confinement. On 7 July 2019, appellant submitted his post-trial matters to the convening authority. Appellant did not allege any issues with his confinement conditions in his submission to the convening authority. The convening authority approved the findings and the adjudged sentence.

In September 2019, a prison guard at appellant's facility, Lance Corporal (LCPL) BF was investigated for inappropriate treatment of prisoners. During the investigation, appellant was interviewed about his interactions with LCPL BF. Appellant disclosed that LCPL BF was "unprofessional" in that he inquired about appellant's charges, marital status, and personal life. Appellant also explained that LCPL BF shared information about a sexual experience he had with his boyfriend, spoke sexually quite often, flirted with appellant, flashed a heart symbol at appellant, shared his Snapchat handle with appellant so they could communicate, and offered to "hang out" with appellant after he was released from confinement. Appellant also stated that he was informed by other inmates that LCPL BF watched him while he showered. Appellant disclosed that LCPL BF gave him unwarranted positive reports and "bothered" him because LCPL BF always selected appellant to be frisked after meals but stated that LCPL BF "hasn't tried to get physical or asked for favors."

Lance Corporal BF provided a sworn statement during the investigation in which he admitted to inappropriate conduct with appellant and two other inmates.

---

[1] A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of one specification of violation of a lawful general order, three specifications of assault consummated by a battery, one specification of assault upon a person in the execution of law enforcement duties, and one specification of disorderly conduct, in violation of Articles 92, 128, and 134, UCMJ. Appellant was found not guilty of one specification of aggravated assault and four specifications of resisting apprehension, in violation of Articles 95 and 128, UCMJ. Appellant was sentenced to be reduced to the grade of E-1, eleven months confinement, and to be discharged from the service with a bad-conduct discharge.

He admitted that he inquired about appellant's charges, told appellant he had a boyfriend, chatted with appellant "often" and was "buddies" with appellant, shared his Snapchat handle with appellant, flashed "heart hands" at appellant, and offered to hang out with appellant upon his release from confinement. Lance Corporal BF explained that he randomly selected which inmates to frisk after meals but then admitted that he selected appellant and another inmate "most of the time." However, LCPL BF denied that he ever intentionally looked at any inmate while they showered,[2] denied he selected appellant for frisks because he wanted to touch him, and denied any physical contact with inmates other than frisk searches and incidental contact at the door in the galley. Lance Corporal BF also stated that he was unaware that he could not inquire about an inmate's charges or that he could not have personal contact with inmates after they were released from confinement.

In November 2019, appellant completed a declaration[3] in which he made additional allegations against LCPL BF which he had not disclosed to the investigator a few months earlier. Appellant shared that he did not have any concerns or issues while serving confinement until LCPL BF became a guard in his unit in early July 2019. Appellant alleged that during LCPL BF's daily frisks he would frisk appellant more "thoroughly" and "aggressively" than other guards, grabbed appellant's legs as though he was attempting to arouse appellant, and fully placed his hand on appellant's genitals as he was "cupping them." On one occasion, as LCPL BF was selecting inmates for frisks, he told appellant "you know it's your turn." Appellant explained that he noticed LCPL BF watching him in the shower almost every day, despite previously stating that others informed him LCPL BF watched him in the shower, and that LCPL BF's behavior made him feel "anxious, uncomfortable, and unsafe." Appellant also provided more details regarding sexual conversations LCPL BF engaged in with appellant. He stated LCPL BF would hover around his cell door and smile and wink at him. Appellant revealed that he felt helpless and powerless since LCPL BF was a prison guard and he was an inmate. Appellant stated he felt "unsafe, harassed, and abused" as a result of LCPL BF's actions. Appellant asserted that he did not disclose all of this information to the investigator in September 2019 because he was unsure whether LCPL BF would return to his unit as a guard and he feared retaliation. After LCPL BF was removed from his position in September 2019 as a result of the investigation, he continued to work at the confinement facility but had no further contact with prisoners.

---

[2] Lance Corporal BF admitted that he would look at inmates while showering with his peripheral vision for safety purposes only. On one occasion, however, he admitted to glancing quickly at an inmate, though not appellant, while that inmate was showering.

[3] Appellant submitted a declaration under 28 U.S.C. § 1746.

## II. LAW AND DISCUSSION

### A. No Requirement for a Post-trial Evidentiary Hearing

Appellant's claim of cruel and unusual punishment arose after his post-trial submissions to the convening authority. Thus, appellant's claim is necessarily supported by statements submitted to this court for consideration.[4] We considered appellant's submission consisting of his declaration and declarations from four other prisoners who served confinement at Naval Consolidated Brig Charleston during the same time period as LCPL BF's inappropriate conduct, all dated in November 2019. We also considered government submissions consisting of the sworn statements of both appellant and LCPL BF provided in September 2019 during the investigation into LCPL BF's inappropriate treatment of prisoners.

Given that both appellant and the government submitted extra-record matters for this court's consideration in evaluating appellant's claim of cruel and unusual punishment, we must first address whether a post-trial evidentiary hearing is required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Our superior court has outlined five principles for this court in determining whether it is necessary to remand a case for an evidentiary hearing. *Id.* If any one of those five principles are satisfied, then this court may resolve the case without an evidentiary hearing. *Id.* Under the first principle outlined in *Ginn*, we need not remand a case for fact-finding if "we can determine that the facts asserted, even if true, would not entitle appellant to relief." *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001) (citing *Ginn*, 47 M.J. at 248).

Appellant's two statements assert that he was subjected to inappropriate verbal and non-verbal communications and use of excessive force during frisk searches from LCPL BF over a period of two months. Specifically, appellant asserts that LCPL BF: (1) inquired about his personal life, sexual orientation, and charges; (2) shared information with appellant about sexual experiences that he had with a boyfriend; (3) flirted with appellant by smiling and winking at him and flashing heart symbols; (4) provided appellant his Snapchat handle and suggested they hang out after appellant's release from confinement; (5) watched appellant while he showered; (6) gave appellant special privileges on several occasions including positive spot reports; and (7) singled appellant out for frisk searches more frequently than others by selecting appellant for searches after every meal and frisked appellant

---

[4] Additional matters may be considered by a court of criminal appeals outside the record of trial in conducting its Article 66, UCMJ, review for claims of a violation of the Eighth Amendment and Article 55, UCMJ. *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020).

more aggressively by grabbing appellant's legs as though he was attempting to arouse appellant and fully placed his hand on appellant's genitals as he was "cupping them." Lance Corporal BF's sworn statement confirmed all of appellant's allegations with the exception of giving appellant special privileges like unwarranted spot reports, watching appellant while he showered, and touching any prisoner in any way other than required by virtue of his official duties.

The material factual dispute between appellant's submission to this court and the government's submission is whether LCPL BF provided appellant special privileges such as unwarranted positive spot reports, watched appellant while he showered, and whether LCPL BF unnecessarily "cupped" appellant's genitals during frisk searches. Assuming, without deciding, LCPL BF's actions were as appellant claimed, we conclude that appellant has not sustained his burden of establishing cruel and unusual punishment and therefore, we need not remand this case for a fact-finding hearing.

### B. Exhaustion of Administrative Remedies

Before being entitled to relief for a claim of cruel and unusual punishment, our superior court established that "'[a] prisoner must seek administrative relief prior to invoking judicial intervention' to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (quoting *White*, 54 M.J. at 472); *see also United States v. Bright*, 63 M.J. 683, 686 (Army Ct. Crim. App. 2006) (en banc). This requirement applies whether the claim involves denial of medical care, conditions of confinement, or use of excessive force. *White*, 57 M.J. at 472 (analyzing a claim of deprivation of substance abuse treatment, intimidation, threats, and extended periods of verbal abuse); *United States v. Erby*, 54 M.J. 476 (C.A.A.F. 2001) (analyzing claims of verbal abuse and ransacking of personal property).

As we have previously recognized, exhaustion of administrative remedies "promotes the proper treatment of prisoners because it encourages the notification of officials if guards mishandle prisoners," allows for the resolution of grievances at the lowest level, and "ensure[s] that an adequate record has been developed with respect to the procedures for considering a prisoner grievance and applicable standards." *Bright*, 63 M.J. at 686–87 (citation omitted). "Absent some unusual or egregious circumstance," an appellant must exhaust the grievance system at the confinement facility. *Wise*, 64 M.J. at 469. Whether an appellant has exhausted administrative remedies is reviewed de novo and is a mixed question of law and fact. *Id.* at 471.

Appellant has neither furnished this court with evidence that he exhausted his administrative remedies prior to invoking judicial intervention, nor has he alleged that he experienced "unusual or egregious circumstances" such that he could not

5

avail himself of administrative relief within the confinement facility. While the government provided this court with a sworn statement that appellant provided during an investigation into LCPL BF's treatment of prisoners, that investigation arose based upon an allegation made by another inmate, and not based upon any complaint made by appellant. Once another inmate filed a complaint against LCPL BF, he was removed from his position as a guard and separated from prisoners. In his November 2019 declaration, appellant asserts that he did not provide a full account of LCPL BF's mistreatment of him because he was unsure whether LCPL BF would return to his housing unit and feared reprisal. Appellant did not provide context as to whether this declaration was provided to the confinement facility or investigator from the September investigation or rather, prepared specifically for this court. We also note that any claimed fear of reprisal on appellant's part, even if understandable given his situation, does not by itself constitute the type of "unusual or egregious circumstances" warranting our acceptance of his failure to exhaust administrative remedies. Because appellant has failed to establish that he exhausted his administrative remedies nor has he provided to this court any "unusual or egregious circumstances" justifying such a failure, appellant is entitled to no relief under the Eighth Amendment or Article 55, UCMJ.

### C. Cruel and Unusual Punishment

While appellant's failure to exhaust administrative remedies alone is a sufficient basis for denying relief under either the Eighth Amendment or Article 55, UCMJ, we also find that appellant's mistreatment by LCPL BF does not rise to the level of cruel and unusual punishment.

Whether appellant suffered cruel and unusual punishment at the hands of a prison guard in violation of the Eighth Amendment or Article 55, UCMJ, is a question we review de novo. *White*, 54 M.J. at 471.

The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. Article 55, UCMJ, prohibits various specific punishments "or any other cruel or unusual punishment." UCMJ art. 55. The two types of punishments prohibited by the Eighth Amendment are those which are "incompatible with the evolving standards of decency that mark the progress of a maturing society" or punishments which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). In the context of confinement conditions, the Supreme Court observed that the Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

When claiming that a prison guard's actions violated the Eighth Amendment, appellant bears the burden of satisfying both an objective and subjective test by

establishing: "(1) an objectively, sufficiently serious act or omission that resulted in the denial of necessities;" and "(2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [appellant's] health and safety." *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (citing *Farmer*, 511 U.S. at 834). Appellant must also demonstrate that the "misconduct by prison officials produced injury accompanied by physical or psychological pain." *United States v. Brennan*, 58 M.J. 351, 354 (C.A.A.F. 2003) (citations omitted).

### 1. *Appellant fails to establish that LCPL BF's actions are sufficiently serious.*

We find that appellant failed to establish a sufficiently serious act or omission rising to the level of cruel and unusual punishment. Lance Corporal BF subjected appellant to sexually charged verbal and non-verbal communications by discussing his own sexual experiences, inquiring about appellant's sexual orientation, and generally flirting with appellant by smiling, winking and flashing a heart symbol at appellant, and requesting to spend time with appellant upon his release from confinement. While these types of communications and actions from a prison guard are inappropriate and rise to the level of sexual harassment, they are not sufficiently serious to constitute cruel and unusual punishment akin to the actions of the prison official in *United States v. Brennan*. In *Brennan*, the prison official mistreated the prisoner every day over a two-month period. 58 M.J. at 354. On one occasion, he used graphic language to brutally threaten inmate Brennan with anal sodomy; on another occasion, he isolated inmate Brennan in a locked room, trapped her, and physically assaulted her. *Id.* While we condemn LCPL BF's communications to appellant, they are significantly less serious than the actions in *Brennan* such that they do not rise to the level of cruel and unusual punishment contemplated by the Eighth Amendment and Article 55, UCMJ. *See also United States v. Sanchez*, 53 M.J. 393, 395 (C.A.A.F. 2000) (noting that appellant was subjected to repeated verbal sexual harassment by military guards and other inmates, including "inappropriate sexual" comments and "inappropriate sexual questions," but not finding a violation of the Eighth Amendment or Article 55, UCMJ).

We also find that LCPL BF watching appellant while he showered and using excessive force during frisk searches resulting in the "cupping" of appellant's genitals are not sufficiently serious as to constitute cruel and unusual punishment. We agree with the government's argument that there is a legitimate penological interest in safeguarding prisoners that allows for observing prisoners in the shower and conducting frisk searches after meals, the latter to check for items or contraband that could be used as weapons. Of course there are limits to how observations and searches can be lawfully conducted. *See United States v. Kinsch*, 54 M.J. 641, 648 (Army Ct. Crim. App. 2000) ("While prison guards may lawfully frisk and search inmates to insure the safety of the institution and its personnel, they may not do so

in a manner calculated to intentionally cause unnecessary physical and mental pain.").

Accepting appellant's version of events as the truth, and assuming that LCPL BF mistreated appellant by unnecessarily watching appellant while he showered and by using excessive force during lawful frisk searches by "cupping" appellant's genitals, we conclude in light of other cases that these actions are not so serious as to qualify as cruel and unusual punishment. In *Kinsch*, we found a constitutional and statutory violation based on the prison guard "maliciously and sadistically" striking the appellant's testicles several times during frisk searches. 54 M.J. at 648. We reached a similar conclusion in *United States v. Ellis* based on the prison official's "repeated and unwarranted 'karate chops' to [the appellant's] testicles" during frisk searches. ARMY 9900621, 2001 CCA LEXIS 434, *2–5 (Army Ct. Crim. App. 3 Jan. 2001) (mem. op.). Additionally, in *United States v. Gronewald*, we found a violation based on the prison official striking appellant's testicles "as many as twenty-five times over eight months." ARMY 9900254, 2001 CCA LEXIS 446, *8 (Army Ct. Crim. App. 19 Mar. 2001) (mem. op.). Here, while LCPL BF's actions of watching appellant shower and "cupping" his genitals during frisk searches are unacceptable and demeaning, we do not find them to be as serious or abusive as the actions in the above-referenced cases. We note that while appellant stated these actions made him feel anxious, abused, and harassed, he alleges no particularized physical pain or suffering and presents no "clinically documented psychological trauma." *Sanchez*, 53 M.J. at 396. Therefore, we find that appellant has failed to satisfy the objective prerequisite for a finding of an Eighth Amendment or Article 55, UCMJ, claim of cruel and unusual punishment.

> 2. *Appellant fails to establish that LCPL BF acted with a culpable state of mind.*

Appellant also fails on the subjective prong. We find that appellant has not established that LCPL BF possessed a culpable state of mind with a deliberate indifference to appellant's health and safety. Under this standard, the prison guards and officials "must be consciously aware of the risk or danger to the inmate and choose to ignore it; they must have been aware of the harm or risk of harm caused appellant, and continued anyway." *Sanchez*, 53 M.J. at 396. Here, as in *Sanchez*, there is no evidence that appellant ever complained directly to LCPL BF or prison officials prior to LCPL BF's removal from his position. Absent such a complaint by appellant, we are unable to conclude that LCPL BF was made aware of the risk of harm to appellant's health and safety and chose to ignore that risk. The same conclusion applies to prison officials with oversight over both LCPL BF and the prison at large. Prison officials can neither ignore nor fix problems of which they are not aware.

Additionally, we do not find that LCPL BF's actions in this case are the type that, by their nature, reflect a culpable mental state. *Cf. Brennan*, 58 M.J. at 354 (finding the guard's culpable mental state was "clearly established by his conduct, which [was] wholly unrelated to *any* legitimate penological or disciplinary purpose") (emphasis added). The unwanted personal conversations, sexually based commentary, winking and "flirting" to which appellant was subjected does not demonstrate a deliberate indifference to appellant's health and safety. While LCPL BF essentially sexually harassed appellant, he did not threaten appellant with non-consensual sexual acts, demand sexual acts in exchange for privileges, or threaten to harm appellant as in *Brennan*. Lance Corporal BF admitted to flirting with appellant but asserted he was unaware he could not have personal conversations with appellant or hang out with inmates upon their release from confinement. Lance Corporal BF's sexual harassment of appellant demonstrates his desire for a sexual and personal relationship with appellant upon his release, but these actions do not demonstrate that he possessed deliberate indifference to appellant's health and safety.

Further, LCPL BF's watching appellant while he showered and "cupping" of his genitals during frisk searches does not demonstrate that LCPL BF subjectively intended to maliciously or sadistically harm appellant through the use of wanton or unnecessary force, as found in the cases discussed above. Nor are the acts of watching inmates in the shower or touching their genitals during frisk searches "wholly unrelated" from any legitimate purpose. *Brennan*, 58 M.J. at 354. In conclusion, the actions of LCPL BF in and of themselves do not demonstrate a culpable state of mind, and there are also no comments by LCPL BF coupled with the excessive frisking revealing a culpable state of mind.

While appellant endured inexcusable treatment by LCPL BF during his confinement, it did not rise to the level of cruel and unusual punishment. We therefore hold that appellant has failed to establish conduct amounting to cruel and unusual punishment warranting relief by this court.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge ALDYKIEWICZ and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DONALD P. LAVIOLET**
**United States Army, Appellant**

ARMY 20190235

---

### NOTICE OF COURT-MARTIAL ORDER CORRECTION

---

IT IS ORDERED THAT, to reflect the true proceedings at the trial of the above-captioned case,

GENERAL COURT-MARTIAL ORDER NUMBER 11, HEADQUARTERS, UNITED STATES ARMY MANEUVER CENTER OF EXCELLENCE, 1 KARKER STREET, BUILDING 4, FORT BENNING GEORGIA 31905-4500, dated 23 July 2019,

IS CORRECTED AS FOLLOWS:

BY adding at the top of page one, under Firearm Prohibitions Apply, the words and figures "Misdemeanor Crime of Domestic Violence. 18 U.S.C. 922(g)(9)."

DATE:  4 September 2020

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court