## State of Minnesota vs. Marco Matakovich, Jr.

Argued by appellant, submitted on brief by respondent, Nov. 20, 1894. Affirmed Dec. 28, 1894.

No. 9166.

**An indictment held good.**

> *Held*, that the indictment upon which defendant was tried and convicted of manslaughter in the second degree stated facts sufficient to constitute that crime, as it is defined in Pen. Code § 164, subd. 2.

**"In the heat of passion" need not be alleged.**

> That the crime is committed "in the heat of passion" is a mitigating, not a differentiating, circumstance, so that a failure to allege the fact, or a failure to prove it, could not have prejudiced defendant.

**Correction of an inaccurate charge rendered the error harmless.**

In charging the jury the court inadvertently remarked that defendant was accused of the offense defined in Penal Code § 160, subd. 2,—manslaughter in the first degree. *Held*, in view of other parts of the charge, whereby this inadvertence was corrected, and the fact that the defendant was simply convicted of manslaughter in the second degree, the remark could not have affected the verdict.

**Necessary separation of jurors a harmless irregularity.**

From the affidavits on which the court below held that alleged irregularity and misconduct of certain jurors after they had retired to consider their verdict had not been substantiated, it is clear that all reasonable inference, suspicion, or presumption that either of these jurors had been approached or tampered with while separated from his fellows for a few minutes, or that the verdict had been affected or influenced thereby, was rebutted and done away with.

Appeal by defendant, Marco Matakovich Jr., from his conviction of manslaughter in the second degree, and order of the District Court of St. Louis County, *S. H. Moer*, J., entered May 18, 1894, denying his motion in arrest of judgment and refusing a new trial.

## *Indictment.*

Marco Matakovich Jr. is accused by the grand jury of the county of St. Louis, by this indictment of the crime of manslaughter in the first degree, committed as follows: The said Marco Matakovich Jr. on the 18th day of February, A. D. 1894, at Soudan near the city of Tower, in the said county of St. Louis and state of Minnesota, without the authority of law, but without a design to effect his death, feloniously did kill and murder one Mat Vivada, a human being, by then and there striking him upon the head with a shovel, thereby inflicting on him a mortal wound of which mortal wound he the said Mat Vivada, died at Soudan aforesaid on the 18th day of February, 1894.

That such killing was neither justifiable nor excusable. Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Minnesota.

Dated at Duluth, in the said county of St. Louis and state of Minnesota on the 3rd day of April, A. D. 1894.

Harvey A. Wing,
Foreman of the Grand Jury.

Witnesses examined before the Grand Jury: Martin Rosman, Dr. W. W. Richardson, Anton Pruss, Frank Schweiger, interpreter.

Indorsed: A True Bill.

Harvey A. Wing,
Foreman of the Grand Jury.

Further indorsed: Presented to the court in open court by the foreman of the Grand Jury in the presence of the Grand Jury, and filed with the clerk this 4th day of April, 1894.

D. J. Sinclair, clerk,
By S. E. Peachey, deputy.

### Verdict.

We the jury in the above entitled action, find the defendant guilty of manslaughter in the second degree, and on account of the defendant's youth the jury unanimously recommend him to the mercy of the court. Dated April 19, 1894.

Jas. A. Waugh, foreman.

### Defendant's Fourth Assignment of Error.

Defendant assigns as error that part of the charge to the jury, as follows: "If you should find that the killing in this case was done by defendant in the heat of passion, but not by a deadly weapon or by the use of means either cruel or unusual, then you may find the defendant guilty of manslaughter in the second degree. A dangerous weapon is an instrument liable to produce death or great bodily injury; so that if you find that the instrument used was a dangerous weapon, one likely to produce great bodily injury, if you find that as a fact, then you are not at liberty to return defendant guilty of manslaughter in the second degree. The court leaves it to you to say whether or not the instrument used was a dangerous weapon. If you should find that it was a dangerous weapon, the only verdict you should find is guilty as charged in the indictment, or not guilty. If you find that it is a dangerous weapon, then the defendant should be found guilty, if at all, of manslaughter in the first degree. Otherwise, an acquittal. However, if you should find that the weapon used was not a dangerous weapon, and you should find that the de-

fendant was guilty in the other degree, then you are at liberty to find him guilty in the second degree. Otherwise not."

After retiring for deliberation and before arriving at a verdict six of the jurymen separated themselves from the others and left the sight and hearing of the officer in whose charge they were and remained in a water closet out of his sight and hearing for several minutes. During that time another person in the closet had some trivial conversation with one of these jurymen.

*Allen & Baldwin,* for appellant.

In a case of felony the fact of separation of the jury was at one time in this state sufficient to require a new trial. It was unnecessary to show a tampering with the juror, or even a conversation with him on the subject of the trial. *Maher v. State,* 3 Minn. 444. It was even held in *State v. Hoberg,* 3 Minn. 262, that the trial judge himself could not give the jury the least information except in open court in presence of the prisoner. See also *State v. Parrant,* 16 Minn. 178. In a later case, *State v. Conway,* 23 Minn. 291, this court has somewhat modified the rule laid down in those cases.

The jurors in the case at bar were out of the sight and hearing of the officer for several minutes and they had some conversation with another person; they were in a small water closet with other persons who certainly had opportunity for conversation and communication with them. The counter affidavits offered by the state do not exclude all reasonable inference, presumption and suspicion that the jurors were tampered with, or that the verdict was or could have been in any manner influenced or affected by the irregularity. Assuming that the indictment charges the offense of manslaughter in the second degree, under Penal Code, § 164, subd. 3, we must conclude that he is charged with the commission of the offence in one manner and is convicted of the commission of it in another manner. In other words, he is accused of the commission of the offence under this subdivision two and is convicted under subdivision three of that section. *State v. Henn,* 39 Minn. 465; *State v. Vorey,* 41 Minn. 134.

That part of the charge to the jury which is set out in our fourth assignment of errors was erroneous and prejudicial to the defend-

ant. The court instructs the jury that they may find the defendant guilty of manslaughter in the second degree if they find that the instrument used was not a deadly weapon. The court does not in this connection say anything about the justifiableness of the act, which was the main defence of the defendant, and the jury could well infer from the language used by the court that this defence was not established. The court should have added the proviso that such should be their verdict if they found the killing was not justifiable. The language used might easily mean that the one question for them to determine, was whether or not the weapon used was a deadly weapon.

The court erred in not granting defendant's motion in arrest of judgment for the reason that the indictment does not charge murder in any degree, nor manslaughter in the second degree, whereas the defendant is convicted of manslaughter in the second degree. Counsel for the state now claims that the indictment is good under the third subdivision of section 164 of the Penal Code, defining manslaughter in the second degree. We contend that it does not come within that section, because it does not state that the act complained of does not constitute murder in the first or second degree, or manslaughter in the first degree. We believe the most the indictment charges is assault. Having been convicted of a crime with which he is not charged, the defendant's motion in arrest of judgment should have been granted.

*Chas. C. Tear*, County Attorney, *H. W. Childs*, Attorney General, and *George B. Edgerton*, his assistant, for respondent.

The rule is now well established that before a new trial will be granted for alleged misconduct and irregularities in the proceedings of the jury, it must affirmatively appear that the defendant was prejudiced by such misconduct or irregularities. *State* v. *Dumphey*, 4 Minn. 438; *Ogle* v. *State*, 16 Tex. Ct. App. 361; *State* v. *Conway*, 23 Minn. 291; *Stewart* v. *State*, 31 Tex. Ct. App. 153; *State* v. *Avery*, 113 Mo. 475; *People* v. *Bemmerly*, 98 Cal. 299; *King* v. *State*, 91 Tenn. 617; *Territory* v. *King*, 6 Dak. 131; *State* v. *Orrick*, 106 Mo. 111; *Blyew* v. *Commonwealth*, 91 Ky. 200.

Taking the charge as a whole there was nothing misleading in it, certainly not to the prejudice of the defendant. The charge against

the defendant was stated by the court in the opening part of his instructions to the jury clearly and in the words of the indictment. Granting that the trial court did subsequently in his charge misstate the exact charge against the defendant, no prejudice could have resulted in view of all the facts in the case. The indictment states at least the offense of manslaughter in the second degree, under Penal Code, § 164, subd. 3, and that being the degree of which he was convicted, no prejudice is done to the defendant. The indictment charges the killing to have been done in a certain manner. No contention is made that the proof varied from the allegation.

COLLINS, J. This defendant was convicted of the crime of manslaughter in the second degree. Thereupon, his counsel moved for a new trial on two grounds. *First*, irregularities of or misconduct of the jurors. *Second*, errors in the charge of the court, duly excepted to by counsel. On the denial of this motion, another was made in arrest of judgment, on the ground that the indictment did not set forth facts constituting murder in any degree, nor constituting manslaughter in any degree.

It will be noticed that, in the charging part of the indictment, defendant is accused of the crime of manslaughter in the first degree, which is defined (Pen. Code, § 160) as a homicide committed without a design to effect death—first, by a person engaged in committing or attempting to commit a misdemeanor under certain circumstances; or, second, in the heat of passion, but in a cruel or unusual manner, or by means of a dangerous weapon,—and also that he was only convicted of the crime of manslaughter in the second degree.

That the accusation was of manslaughter in the first degree was of no consequence, providing the statement of facts in the body of the pleading was sufficient to warrant the conviction actually had. The gist of the indictment was that defendant, without the authority of law, but without a design to effect death, feloniously did kill and murder Vivada, by striking him upon the head with a shovel, inflicting a mortal wound, of which the latter died, and that such killing was not justifiable or excusable.

The statutory tests to be applied when considering the indict-

ment are whether the act charged as the offense is clearly and dis·
tinctly set forth, in ordinary and concise language, and, further,
that the offense is stated with such a degree of certainty as to
enable the court to pronounce judgment, upon a conviction, accord-
ing to law.   We cannot see wherein it fails to comprehend these
statutory requirements.   It is true that it is not averred, in the
words of the second subdivision of section 160, supra, that the
killing was in a cruel and unusual manner, or by means of a danger-
ous weapon.   Nor is it alleged, in the words found in the second
subdivision of the section defining manslaughter in the second
degree (Pen. Code, § 164), that the killing was not by a deadly
weapon, nor by the use of means either cruel or unusual.   The
manner of the killing, and the means or weapon used, were set
forth, however, and in this respect the indictment was definite and
certain.   All of the formal technical allegations required in plead-
ing what was known at common law as "voluntary manslaughter"
are found therein.   It is true that the words "in the heat of pas-
sion," used in both of the subdivisions before mentioned, are not in
the indictment, but this is not a substantial defect.   If, by their
omission, the offense charged had been aggravated in any manner,
such omission would have proven fatal.   That the crime was com-
mitted in the heat of passion is a mitigating, not a differentiating,
circumstance; so that a failure to allege it, or a failure to prove
the fact, could not, under the indictment, have prejudiced the ac-
cused.   The indictment was, at least, sufficient, under Penal Code,
§ 164, subd. 2, and the motion in arrest of judgment was properly
denied.

At the outset of his charge to the jury, the Judge stated the ac-
cusations against defendant exactly as set forth in the body of the
indictment.   Later, and probably inadvertently, the Judge remarked
that the state accused the defendant with the killing of Vivada in the
heat of passion, but in a cruel and unusual manner, or by means of a
dangerous weapon, using the language of Penal Code, § 160, subd. 2.
To this remark an exception was taken.   Had defendant been con·
victed of manslaughter in the first degree, the exception might have
been well taken, but in view of what was afterwards charged re-
lating to the crime of manslaughter in the second degree, and the

fact that defendant was simply convicted of the crime last mentioned, and not of the more serious offense to which the remark referred, no prejudice could have resulted from it.

There is nothing in counsel's fourth assignment of error. With the very complete charge of the court, the jury could not have failed to understand perfectly that if, from the evidence, it appeared that the killing was justifiable, it was their duty to acquit.

The motion for a new trial was, in part, based on affidavits respecting the conduct of six of the jurors after they had retired to a room in the courthouse to deliberate on their verdict. The alleged irregularity or misconduct consisted in these jurors being, for a very few minutes, out of sight of the officer, who, at their request, had accompanied them to a water closet in the rear of the courthouse. We need not dwell upon the particulars of the occurrence, as presented by the affidavits before the trial court on this branch of the motion. None of the circumstances indicated that a wrong had been done, and all reasonable inference, suspicion, or presumption that either of these jurors had been approached or tampered with on the occasion, or that their verdict had been affected or influenced thereby, were rebutted and done away with. The defendant was not prejudiced, and was not, by reason of this slight irregularity, entitled to a new trial. *State* v. *Conway,* 23 Minn. 291.

Order affirmed.

(Opinion published 61 N. W. 677.)