UNITED STATES, Appellee

v

GARY O. HARRISON, Private First Class,
U. S. Marine Corps, Appellant

16 USCMA 484, 37 CMR 104

No. 19,593

January 27, 1967

*John J. Murray, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Calvin C. Rock, Esquire, Major L. G. Bohlen,* USMC, and *Lieutenant Edward F. O'Keefe,* USNR.

*Lieutenant Jean E. Van Slate,* USN, argued the cause for Appellee, United States.

### Opinion of the Court

QUINN, Chief Judge:

The accused pleaded guilty to voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919, before a general court-martial convened in Da-Nang, Republic of Vietnam. He was duly convicted and sentenced to dishonorable discharge, confinement at hard labor for eight years, and accessory punishments. The convening authority approved the findings of guilty and the sentence, but the board of review reduced the confinement to five years, and changed the dishonorable discharge to a bad-conduct discharge. On this appeal, the accused contends the specification does not allege a violation of Article 119. He also alleges he was prejudiced by the failure of the convening authority to attach to the record of trial a petition for clemency from his father for consideration by the board of review.

The specification alleges in pertinent part that the accused "did . . . willfully and unlawfully kill Private First Class William A. OBERG . . .

484

by shooting him in the head with a rifle." The language follows the model form of specification set out in the Manual for Courts-Martial, United States, 1951, Appendix 6c, Form 86, page 484. Several cases involving a similar specification have been considered by this Court, but in none have we specifically considered the sufficiency of the allegations to charge voluntary manslaughter. See United States v Alphin, 15 USCMA 14, 34 CMR 460.

A specification must allege directly or by fair implication every essential element of the offense intended to be charged. United States v Fout, 3 USCMA 565, 13 CMR 121. Article 119(a) provides that voluntary manslaughter is committed when a person subject to the Uniform Code of Military Justice "with an intent to kill or inflict grievous bodily harm, unlawfully kills a human being in the heat of sudden passion caused by adequate provocation." Comparing the language of Article 119(a) with that of the specification, appellate defense counsel contend the latter is fatally deficient in that there is no mention of the fact the accused acted in heat of sudden passion. Some State court decisions support this view. In Commonwealth v Mosser, 133 Ky 609, 118 SW 915 (1909), for example, the Kentucky Court of Appeals sustained a demurrer to an indictment charging that the accused "did unlawfully, willfully, and feloniously kill" the victim by shooting him with a pistol, on the ground the indictment failed to allege the act was committed in the course of a sudden affray or heat of passion. See also Moody v State, 38 Okla Crim 23, 259 Pac 159 (1927). Other State courts, construing their respective statutes defining the offense of manslaughter, have sustained indictments which do not contain any allegation as to heat of passion. See State v Matakovich, 59 Minn 514, 61 NW 677 (1894); Smith v State, 231 Ark 235, 330 SW2d 58 (1959). Assuming the latter group represents, as Government counsel contend, an "overwhelming majority," we are not inclined to examine the details of the several statutes and the specifics of the particular State practice to determine whether they are sufficiently similar to military law and practice to justify our reliance upon them. See United States v Hicks, 6 USCMA 621, 20 CMR 337. In our opinion, the course of decision is clearly marked by established military law and practice.

Before enactment of the Uniform Code, manslaughter was not specifically defined in military law. ▮▮▮▮ ▮ In the Army, Article of War 93 merely listed the offense by name. 10 USC (1946 ed) § 1565. This statutory reference made it apparent Congress intended that the offense be construed with reference to the common law. United States v McFarland, 8 USCMA 42, 23 CMR 266; Turner v State, 160 Ala 55, 49 So 304 (1909). In the Navy, the offense was prosecutable under the general provision of Article 22(a), Articles for the Government of the Navy, that "[a]ll offenses . . . not specified . . . shall be punished as a court martial may direct," which incorporated the definition of manslaughter set out in 18 USC (1946 ed) § 453. Naval Courts and Boards, 1937, § 119, page 114. The Federal penal code defined manslaughter as the "unlawful killing of a human being without malice"; it described two kinds of manslaughter, voluntary, which occurred in "a sudden quarrel or heat of passion," and involuntary. The definition, and description of the two aspects of the offense, corresponded to those of the common law. See United States v Bartholomew, 1 USCMA 307, 312, 3 CMR 41.

Each service used a model form of specification to charge voluntary manslaughter. Neither form contained an allegation as to heat of passion.[1] Navy

---

[1] The substantive allegations in both forms were substantially similar to the model form of specification set out in the Manual for Courts-Martial, United States, 1951. The pertinent language of the Navy form was: "[The accused] did . . . feloniously, wilfully, and without justifiable cause, assault and strike one . . . inflicting a mortal wound . . . of which said mortal

reviewing authorities expressly recommended close adherence to the Navy model specifications. 2 Compilation of Court-Martial Orders, Navy Department, 1916–1937, pages 1756–1757. And, in the Army cases which were initiated under the Articles of War and appealed to this Court for review, the sufficiency of the Army model form was never challenged. See United States v Clark, 1 USCMA 201, 203, 2 CMR 107; United States v Riggleman, 1 USCMA 336, 3 CMR 70; United States v Strong, 1 USCMA 627, 5 CMR 55. There was sound reason for this consistent acceptance of the model specifications.

At common law, the killing of a human being with malice aforethought and without justification or excuse was murder. However, recognizing the nature of human conduct, the common law regarded the offense "as of a less heinous character than murder," if the accused was "under the influence of passion or in heat of blood." 1 Wharton, Criminal Law and Procedure, § 274 (1957). Heat of passion was thus viewed as negating malice. As Professor Wharton noted, the "theory . . . [was] that malice cannot exist at the same time as passion of this degree." Id., § 275, page 583. As a result, in common-law practice the indictment for manslaughter followed the same form as that for murder, with the words " 'murder' " and " 'malice aforethought' " omitted. State v Sundheimer, 93 Mo 311, 6 SW 52 (1887). Significantly, it was not necessary to add a specific allegation as to heat of passion. United States v Frye, 25 Fed Case No. 15,173 (CC DC) (1835).

Article 119(a) did not create a new offense or materially alter the definition of voluntary manslaughter committed in heat of passion.[2] It defined

that offense as it was already defined in military law. See Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1246–1248. In this circumstance, it was appropriate to continue to charge the offense, as it had been charged before the Uniform Code of Military Justice, without specifically alleging heat of passion.

As noted earlier, the specification here follows the Manual for Courts-Martial, supra, form and alleges the accused "did . . . willfully and unlawfully kill Private First Class William A. OBERG . . . by shooting him in the head with a rifle." The allegation as to the unlawful nature of the accused's act is identical to the language of Article 119(a). It charges that the homicide was without legal justification or excuse, State v Holliday, 353 Mo 397, 182 SW2d 553 (1944); and it serves "to demonstrate the proscribed character of the accused's act." United States v Sadinsky, 14 USCMA 563, 565, 34 CMR 343.

The meaning of the word "willfully" often depends upon the context of its use. United States v Bernacki, 13 USCMA 641, 643, 33 CMR 173. In one sense, it may merely dispel the idea that a particular act was the result of negligence or accident; in other contexts, it implies a specific intent to effect a designated result. The latter is its usual import in a criminal charge. United States v Schumacher, 2 USCMA 134, 136, 7 CMR 10; see also Haner v United States, 315 F2d 792, 794 (CA 5th Cir) (1963). Here, the alleged willful act is that accused killed Oberg by shooting him in the head with a rifle. It ineluctably conveys a charge that the accused entertained a specific intent to kill. State v Holliday, supra. The specification, there-

---

wound . . . the said . . . died." Naval Courts and Boards, 1937, § 120. The Army sample specification was as follows: "In that —— did, . . . feloniously, willfully, and unlawfully kill ——, by ——." Manual for Courts-Martial, U. S. Army, 1949, Appendix 4, Form 84, page 323.

[2] For the purposes of this appeal, we need not consider whether Article 119

(a), Uniform Code of Military Justice, 10 USC § 919, embraces the concept of a sudden affray as well as heat of passion. See United States v Bartholomew, 1 USCMA 307, 312–313, 3 CMR 41; 1 Wharton, Criminal Law and Procedure, § 280 (1957); cf. Commonwealth v Mosser, 133 Ky 609, 118 SW 915 (1909).

486

fore, includes all the essential elements of voluntary manslaughter, and adequately apprises the accused he is charged with, and must defend against, that offense. That is all a specification need do. See United States v Reid, 12 USCMA 497, 31 CMR 83; cf. United States v Caudill, 16 USCMA 197, 36 CMR 353.

The second assignment of error deals with the convening authority's action. It appears that, while he ■ had the case under review, he received a writing from the accused's father, a clergyman. The document was regarded "as being in the nature of a clemency petition." Although he took the petition into account, the convening authority did not mitigate the sentence. That, of course, was entirely within his right. Article 64, Uniform Code of Military Justice, 10 USC § 864; United States v Lanford, 6 USCMA 371, 20 CMR 87. When he forwarded the record of trial to the board of review for further proceedings, he did not append the clemency petition to it. New matter pertinent to the sentence, however, should be attached to the record of trial. Manual for Courts-Martial, supra, paragraphs 48*j* and 77*a*. The information is then available to, and can be considered by, the board of review. United States v Lanford, supra; cf. United States v Fagnan, 12 USCMA 192, 30 CMR 192. Government counsel describe the petition as a mere "inquiry" by the accused's father, and urge us to disregard it on that basis. It was not, however, so considered by the convening authority; and we are not persuaded that the Government's semantic change accurately reflects its content. Also, we are not inclined to discount the petition because the board of review has already substantially reduced the sentence. Had the board of review known of the contents of the father's appeal, it might perhaps have treated the accused with even greater leniency. Cf. United States v Schoenberg, 16 USCMA 425, 37 CMR 45.

The decision of the board of review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the board of review for reconsideration of the sentence.

Judges FERGUSON and KILDAY concur.