*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### Lamont S. JESSIE, Chief Warrant Officer Two
United States Army, Appellant

**No. 19-0192**

Crim. App. No. 20160187

Argued November 5, 2019—Decided April 6, 2020

Military Judge: Rebecca K. Connally

For Appellant: *Captain Zachary A. Gray* (argued); *Lieutenant Colonel Christopher D. Carrier, Lieutenant Colonel Tiffany D. Pond*, and *Captain Benjamin A. Accinelli* (on brief); *Lieutenant Colonel Todd W. Simpson, Captain Joseph C. Borland*, and *Captain Heather M. Martin*.

For Appellee: *Captain Christopher T. Leighton* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams,* and *Major Hannah E. Kaufman* (on brief); *Major Marc B. Sawyer*.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY and Judge RYAN joined. Judges OHLSON and SPARKS filed separate dissenting opinions.

———————————

Judge MAGGS delivered the opinion of the Court.

A general court-martial found Appellant guilty, contrary to his pleas, of two specifications of sexual assault of a child of twelve years or older, but under the age of sixteen, one specification of conduct unbecoming an officer, and one specification of adultery in violation of Articles 120b, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 933, 934 (2012). The court-martial sentenced Appellant to a reprimand, four years of confinement, and a dismissal. The convening authority approved the adjudged findings and sentence.

On appeal, Appellant asked the U.S. Army Court of Criminal Appeals (ACCA) to reduce his sentence on the grounds that the visitation rules at his confinement facility violated his First and Fifth Amendment rights by depriving him of all direct and indirect contact with his biological children. *United States v. Jessie*, No. ARMY 20160187, 2018 CCA LEXIS 609, at *2, 2018 WL 6892945, at *1–2 (A. Ct. Crim. App. Dec. 28, 2018) (en banc). The ACCA, with ten judges sitting en banc, concluded that it had no obligation to review Appellant's constitutional challenges and that considering them would be inappropriate.[1] *Id.* at *18–19, 2018 WL 6892945, at *7–8. Four of the ten judges dissented. *Id.* at *25, 2018 WL 6892945, at *9–10.

We granted Appellant's petition to determine whether Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012), required the ACCA to consider his constitutional claims and, if so, whether these claims have merit.[2] We now affirm the ACCA's decision.

## I. Background

While temporarily living in the household of a close friend and her family, Appellant engaged in sexual misconduct. The victim of this misconduct was one of his friend's daughters,

---

[1] Appellant also sought relief based on post-trial delay and other matters personally asserted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The ACCA decided that these matters lacked merit. *Jessie*, 2018 CCA LEXIS 609, at *2 n.1, 2018 WL 6892945, at *1 n.1.

[2] The assigned issues are:

I. Whether the Army court erred by considering military confinement policies but refusing to consider specific evidence of Appellant's confinement conditions.

II. Whether the Army court conducted a valid Article 66 review when it failed to consider Appellant's constitutional claims.

III. Whether Appellant's constitutional rights were violated by a confinement facility policy that barred him from all forms of communication with his minor children without an individualized assessment demonstrating that an absolute bar was necessary.

who was about thirteen years old at the time. Subsequent revelations led to the charges, the findings, and the sentence in this case.

Appellant began serving his approved sentence of confinement at the Joint Regional Confinement Facility (JRCF) at Fort Leavenworth, Kansas, in March 2016. At the time, the JRCF's visitation policy for child sex offenders such as Appellant was Military Correctional Complex Standard Operating Procedure 310 (SOP 310). This policy, which the JRCF has since amended,[3] required "inmates who committed sexual offenses with minor children not to have written, telephonic, or in-person contact with any minor child without prior approval by the [facility's commander]."

In March and June 2017, Appellant asked the confinement facility's commander for permission to communicate with his biological children, who at the time were under the age of eighteen. The commander denied both requests. The commander explained that to obtain approval for communication with minor children under SOP 310 an inmate had to complete a sex offender treatment program. And to be eligible for this program, the inmate had to accept responsibility for committing the offenses for which he was confined. Because the confinement facility determined that Appellant did not accept responsibility, he could not participate in the program and, therefore, he could not obtain the commander's approval.

On appeal, Appellant asked the ACCA to use its authority under Article 66(c), UCMJ,[4] to find that his sentence was inappropriate. He argued that the ACCA should reduce his sentence because his confinement conditions violated the Constitution. Specifically, he claimed that SOP 310 violated his

---

[3] According to the ACCA, an amended policy went into effect in November 2018. The amended policy allows children to visit an inmate based on an individualized assessment of risk. The ACCA did not know whether Appellant's children could visit him under the new policy.

[4] Congress amended Article 66, UCMJ, effective January 1, 2019. National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, §§ 531(j), 1081(c)(1)(K), 131 Stat. 1385, 1598 (Dec. 12, 2017). The amendment moved the language in paragraph (c) to paragraph (d)(1) and slightly modified it.

First Amendment right of freedom of association by denying him contact with his children and his Fifth Amendment privilege against self-incrimination by requiring him to accept responsibility for his offenses in order to communicate with his biological children.

The ACCA assumed for the purposes of the appeal that SOP 310 effectively prevented Appellant from having contact with his biological children between March 2016 and November 2018 and that Appellant had exhausted all administrative means of challenging SOP 310. The ACCA, however, determined that it had no obligation to consider Appellant's First and Fifth Amendment claims when assessing his sentence. The ACCA further decided that if it had authority to consider the constitutional claims, it would be inappropriate to do so.[5] The ACCA therefore did not address the merits of Appellant's claims in conducting its review under Article 66(c), UCMJ. The ACCA ultimately affirmed Appellant's approved sentence.

## II. Whether the ACCA Conducted a Proper Review of Appellant's Sentence

Assigned Issue II asks whether the ACCA conducted a proper review of Appellant's sentence under Article 66(c), UCMJ, when it did not consider his First and Fifth Amendment claims in assessing the lawfulness and appropriateness of his sentence. This issue requires us to address the preliminary question of whether the ACCA was authorized to consider the materials outside the record that Appellant submitted in support of his constitutional claims. These materials included SOP 310, Appellant's requests for an exception to SOP 310, and the commander's denial of those requests. This preliminary question is a question of law that we review de novo. *See United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016).

Answering the question of whether a Court of Criminal Appeals (CCA) may consider materials outside the record

---

[5] The ACCA stated: "If we *may* consider appellant's claims for post-trial sentencing relief, but are not required to, the question next becomes whether we *should*. For several reasons, we think not in this case." 2018 CCA LEXIS 609, at *12, 2018 WL 6892945, at *5.

when reviewing a sentence under Article 66(c), UCMJ, is difficult because our past decisions have produced three distinct lines of precedent. Some precedents hold that the CCAs may consider only what is in the record. *See, e.g.*, *United States v. Fagnan*, 12 C.M.A. 192, 194, 30 C.M.R. 192, 194 (1961). Other precedents have permitted the CCAs to supplement the record by accepting affidavits or ordering additional factfinding hearings when the CCAs decide issues that are raised by materials in the record but that are not fully resolvable by those materials. *See, e.g.*, *United States v. Brennan*, 58 M.J. 351 (C.A.A.F. 2003). Still other precedents have allowed the CCAs to consider materials outside the record for a limited class of issues even though those issues are not raised by anything in the record. *See, e.g., United States v. Erby*, 54 M.J. 476, 477 (C.A.A.F. 2001). We analyze Article 66(c), UCMJ, and these three lines of precedent below.

## A. Article 66(c), UCMJ

Article 66(c), UCMJ, has long governed the review of sentences by the CCAs and the two predecessors of the CCAs, the Boards of Review and the Courts of Military Review. The relevant version of this provision states:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c) (2012).

Our cases addressing the scope of the CCAs' review of sentences under Article 66(c), UCMJ, have focused on three significant parts of the second sentence of the quoted language. First are the words specifying that a CCA can affirm only so much of a sentence that it finds "correct in law." These words prevent a CCA from affirming an unlawful sentence, such as one that violates the prohibition against cruel and unusual

punishment in the Eighth Amendment and Article 55, UCMJ. *See Erby*, 54 M.J. at 478.

Second are the words specifying that a CCA may affirm only so much of a sentence as it "determines . . . should be approved." Pursuant to these words, a CCA may not affirm any portion of a sentence that it finds excessive. *See United States v. Nerad*, 69 M.J. 138, 141 (C.A.A.F. 2010). Accordingly, the CCAs have "broad discretionary power to review sentence appropriateness." *United States v. Kelly*, 77 M.J. 404, 405 (C.A.A.F. 2018).

Third are the words specifying that a CCA must review the sentence "on the basis of the entire record." In *Fagnan*, this Court construed the phrase "entire record" to include the "record of trial" and "allied papers." 12 C.M.A. at 194, 30 C.M.R. at 194. Under the Rules for Courts-Martial (R.C.M.) applicable to this case, the "record of trial" contains all of the items listed in R.C.M. 1103(b)(2), and the "allied papers" are items now identified as "matters attached to the record" in accordance with R.C.M. 1103(b)(3).[6] In addition, the "entire record" also includes briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and "allied papers." *See United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988).

### B. Precedents Restricting the CCAs to Reviewing Materials Included in the "Entire Record"

Strictly following the text of Article 66(c), UCMJ, some precedents have limited the CCAs to considering only materials included in the "entire record" when reviewing sentences. In the leading case, *Fagnan*, the appellant asked the

---

[6] The nature of the appellate issue determines the extent to which a CCA may consider "matters attached to the record." For example, a CCA may consider a rejected exhibit (i.e., something that would not be part of the record of trial), in an appeal challenging the ruling that denied admission of the exhibit. *See United States v. Leal*, 44 M.J. 235, 237 (C.A.A.F. 1996). In contrast, in reviewing the legal and factual sufficiency of the evidence, a CCA may consider only admitted evidence found in the record of trial. *See United States v. Heirs*, 29 M.J. 68, 69 (C.M.A. 1989).

Army Board of Review not to approve his bad conduct discharge. 12 C.M.A. at 193, 30 C.M.R. at 193. To support this request, the appellant sought to introduce a favorable psychiatric assessment and a favorable report regarding his conduct while in confinement. *Id.* at 193, 30 C.M.R. at 193. The Board of Review declined to consider these documents, explaining that because the proffered submission "concerns matters which occurred months after the convening authority acted upon the sentence and forwarded the record of trial, it is not a part of the record subject to review under Article 66." *Id.* at 193, 30 C.M.R. at 193. This Court affirmed, holding that under Article 66(c), UCMJ, "the board of review is expressly restricted by Congress to the 'entire record' in assessing the appropriateness of the sentence." *Id.* at 194, 30 C.M.R. at 194. This Court further reasoned that, if military justice proceedings are to be "truly judicial in nature," then the appellate courts cannot "consider information relating to the appropriateness of sentences when it has theretofore formed no part of the record." *Id.* at 195, 30 C.M.R. at 195.

*Fagnan* established a clear rule that the CCAs may not consider anything outside of the "entire record" when reviewing a sentence under Article 66(c), UCMJ. *See* Edward S. Adamkewicz Jr., *Appellate Consideration of Matters Outside the Record of Trial*, 32 Mil. L. Rev. 1, 16 (1966). This Court subsequently applied this rule in *Healy*, a case in which the appellant asked the Army Court of Military Review (ACMR) to consider twenty-five documents outside of the record when assessing the appropriateness of his sentence. 26 M.J. at 395. These documents, most of which were written by prison officials, recommended early release. *Id.* at 395 & 395 n.3. The ACMR refused to consider the documents on grounds that the documents addressed clemency rather than sentence appropriateness. *Id.* at 395. This Court affirmed, ruling that the ACMR could not consider matters of clemency in determining sentence appropriateness. *Id.* at 396–97. The Court stated that it "need not decide" whether the ACMR could consider additional documents relevant to sentence appropriateness as opposed to clemency. *Id.* at 397. But after citing Article 66(c), UCMJ, *Fagnan*, and other decisions, *see id.* at 395, the Court cautioned: "[T]he Code does not provide an opportunity

for the accused and his counsel to supplement the 'record' after the convening authority has acted." *Id.* at 396–97.

The rule in *Fagnan* does not preclude the CCAs from considering prison conditions when reviewing a sentence under Article 66(c), UCMJ, if the record contains information about those conditions. In *Gay*, the CCA reduced a prisoner's sentence under Article 66(c), UCMJ, because prison officials, without justification, had made him serve part of his sentence in maximum security solitary confinement. 75 M.J. at 266. Information about these conditions appeared in the record because the appellant had complained about them in submissions to the convening authority.[7] *See United States v. Harrison*, 16 C.M.A. 484, 487, 37 C.M.R. 104, 107 (1967) (citing *Fagnan* and holding that a Board of Review may consider materials submitted to the convening authority). The government argued before this Court that the CCA had abused its discretion because Article 66(c), UCMJ, does not authorize granting sentence appropriateness relief for post-trial confinement conditions. 75 M.J. at 266–67. But we disagreed, holding that imposing solitary confinement without justification was a "legal deficiency," and that a CCA may reduce a sentence under Article 66(c), UCMJ, based on "a legal deficiency in the post-trial confinement conditions" as part of its sentence appropriateness determination. *Id.* at 269.

Similarly, in *United States v. White*, the appellant claimed that confinement officials violated the prohibition against cruel and unusual punishment in the Eighth Amendment and Article 55, UCMJ, when they severely harassed him and denied him medical treatment. 54 M.J. 469, 470–71 (C.A.A.F. 2001). This Court rejected the government's arguments that we lacked jurisdiction to consider the appellant's claims, holding that Article 67(c), UCMJ, 10 U.S.C. 867(c) (2000), provides this Court jurisdiction to determine on direct appeal whether a sentence is being executed in a manner that offends the Eighth Amendment or Article 55, UCMJ. *Id.* at 472.

---

[7] The R.C.M. 1105 submission was a "matter[] attached to the record" under R.C.M. 1103(b)(3)(C), and the convening authority's action was part of the "record of trial" under R.C.M. 1103(b)(2)(D)(iv).

Although *White* focused on this Court's jurisdiction under Article 67(c), UCMJ, rather than a CCA's jurisdiction under Article 66(c), UCMJ, the decision is consistent with *Fagnan* because the appellant had presented his claim to the convening authority before raising it on appeal. *Id.* at 470. Materials supporting the claims were thus part of the "entire record."

## C. Precedents Allowing the CCAs to Supplement the Record in Resolving Issues Raised in the Record

This Court has never overruled *Fagnan* and has continued to cite the decision in recent years. *See, e.g., United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (following *Fagnan* on the issue of what constitutes the "entire record" under Article 66(c), UCMJ). But notwithstanding the strict interpretation of Article 66(c), UCMJ, in *Fagnan*, some precedents have allowed the CCAs to supplement the record when deciding issues that are raised by materials in the record. In these precedents, the CCAs have accepted affidavits or ordered hearings to determine additional facts pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967) (per curiam).

For example, in *Brennan*, the appellant sought sentence relief before the CCA on grounds that she had suffered sexual assaults and harassment during her post-trial confinement. 58 M.J. at 352. The appellant initially complained about this mistreatment in her submissions to the convening authority. *Id*. On appeal to the CCA, she also submitted an affidavit containing additional details. *Id.* at 353. The CCA and later this Court both considered the affidavit even though it was not part of the entire record. *Id.* This Court has similarly allowed a CCA to accept affidavits or order a *DuBay* hearing when necessary for resolving claims of ineffective assistance of trial defense counsel and a wide variety of other issues when those claims and issues are raised by the record but are not fully resolvable by the materials in the record. *See, e.g., United States v. Parke*r, 36 M.J. 269, 272 (C.M.A. 1993) (listing examples of issues in which *DuBay* hearings have been ordered for gathering additional facts on appeal).

These precedents are not strictly consistent with *Fagnan* and Article 66(c)'s requirement that CCAs limit their review to the "entire record." They also appear to be inconsistent

with general federal practice, which typically would require collateral litigation to address claims that are raised by the record but that cannot be resolved on appeal by materials in the record. *See* 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3956.1 (5th ed. 2019) (stating, as an example, "where the court of appeals holds that a defendant is unable to establish, on direct appeal, a claim of ineffective assistance of trial counsel because the evidence needed to support the claim is outside the record on appeal, the defendant should pursue the ineffective-assistance claim on collateral review"). This Court has acknowledged that there is "no mechanism set out in the Uniform Code of Military Justice for this Court or the Courts of Military Review to evaluate such post-conviction claims" via affidavits and *DuBay* hearings. *United States v. Polk*, 32 M.J. 150, 152 (C.M.A. 1991). But this Court has nonetheless justified the exception to the strict language of Article 66(c), UCMJ, on grounds of precedent and necessity. The Court has concluded based on experience that "extra-record fact determinations" may be "necessary predicates to resolving appellate questions" that arise during Article 66(c), UCMJ, reviews. *Parker*, 36 M.J. at 272.

### D. Precedents Allowing the CCAs to Consider Matters Entirely Outside the Record

A third class of precedents, however, has gone further and allowed the CCAs to consider materials outside the "entire record" when reviewing issues that were not raised by anything in the record. The clearest example is *Erby*. The appellant in that case asserted that prison officials severely harassed him when he first arrived at the confinement facility to serve his sentence. 54 M.J. at 477. He asked the CCA for relief, arguing that his confinement conditions subjected him to cruel and unusual punishment. *Id.* The CCA held that "it had no authority to review [the] appellant's complaint because the mistreatment was not a part of the approved sentence, nor was it raised in [the] appellant's clemency request to the convening authority." *Id.* This Court reversed the CCA, holding that the CCA erred in concluding that it lacked authority to review the claims. Citing *White*, the Court held that the CCA has a duty to determine whether a sentence is "correct in law," which "includes authority to ensure that the severity of

the adjudged and approved sentence has not been unlawfully increased by prison officials." *Id.* at 478 (internal quotation marks omitted) (quoting *White*, 54 M.J. at 472). The Court remanded the case for further factfinding. *Id.* at 479. *Erby* is inconsistent with *Fagnan* and the cases allowing supplementation for resolving matters raised by the record because the "entire record" contained no information concerning the appellant's mistreatment in the confinement facility.

A similar decision is *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007). In *Pena*, the appellant was convicted of sex-related offenses. *Id.* at 261. A clemency and parole board ordered him to participate in a rigorous supervised release program for seventy-two days, ending on the last day of his approved sentence of confinement. *Id.* at 263. The appellant argued on appeal to this Court that this requirement constituted cruel and usual punishment, unlawfully increased the punishment to which he had been sentenced, and rendered his guilty plea improvident. *Id.* at 264. The CCA determined that it had jurisdiction to consider the appellant's allegations regarding the release program but denied him relief on the merits. *United States v. Pena*, 61 M.J. 776, 777–78 (A.F. Ct. Crim. App. 2005). This Court affirmed, determining that the appellant had not presented sufficient proof to warrant relief. The Court explained:

> When an appellant asks us to review the post-trial administration of a sentence, we are typically confronted by issues in which the pertinent facts are not in the record of trial. In such a case, it is particularly important that the appellant provide us with a "clear record" of the facts and circumstances relevant to the claim of legal error.

64 M.J. at 266. This statement is inconsistent with *Fagnan* in that it contemplates that a CCA may consider materials outside the "entire record" when conducting a review under Article 66(c), UCMJ.

E. Reconciling and Applying the Conflicting Precedents

The foregoing discussion raises the question of how to reconcile the three categories of cases. The Government argues that we can accommodate their discord by ruling that CCAs may consider materials outside the entire record only when assessing cruel and unusual punishment claims, such as

those in *Erby*, and that CCAs cannot consider materials outside the entire record in other contexts. In contrast, relying on *Erby*, *Pena*, and *White*, Appellant argues that appellants should have the right to supplement the record whenever they raise claims of constitutional or statutory violations. Appellant grounds this position principally on the language in Article 66(c), UCMJ, requiring the CCAs to determine that a sentence is "correct in law."[8]

Looking carefully at all of these cases, we do not see a good reason for disagreeing with *Fagnan*.[9] The second sentence of Article 66(c), UCMJ, says: "[The CCA] may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, *on the basis of the entire record*, should be approved." Article 66(c), UCMJ (emphasis added). The Court in *Fagnan*, in our view, correctly interpreted the express requirement that a CCA base its review on the "entire record" to mean that a CCA cannot consider matters outside the "entire record." We see nothing in the statutory text requiring special treatment for all appeals raising statutory or constitutional claims. The "entire record" restriction, under the grammar and punctuation of the second sentence, applies equally whether the CCA is reviewing a sentence's correctness in law,

---

[8] Appellant at times also grounds this position on the "should be approved" language of Article 66(c), UCMJ. In this context, our prior decisions have not clearly delineated the difference between the "correct in law" and sentence appropriateness determinations, nor specified under which provision post-trial confinement condition claims fall.

[9] Sometimes we are forced to choose between conflicting precedents, accepting one and overruling the other. *Compare United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (following most recent precedent), *with United States v. Perkins*, 78 M.J. 381, 388 (C.A.A.F. 2019) (declining to follow more recent precedent due to strong reasons to adhere to an earlier precedent). In this case, however, the question is not whether we must follow one line of precedent and completely reject another, but instead only whether we should expand recent precedents like *Erby* into new contexts when this step would further erode older precedents like *Fagnan*.

reviewing a sentence's correctness in fact, or determining whether a sentence should be approved.[10]

We also see no reason, in this case, to reconsider the second category of precedents described above. Those precedents have created an exception to *Fagnan* by allowing courts to consider affidavits and gather additional facts through a *DuBay* hearing when doing so is necessary for resolving issues raised by materials in the record. In the present case, Appellant did not present any claim regarding confinement facility policies in his submissions to the convening authority. Accordingly, nothing in the record raises an issue regarding those policies. The precedents in the second category, accordingly, have no bearing on this case.

This leaves only the question whether, in this case, we should extend the third category of precedents. As described above, *Erby* and *Pena* allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, even though there was nothing in the record regarding those claims. As we consider this question, we note that the opinions in *Erby* and *Pena* did not address the language of Article 66(c), UCMJ, that limits a CCA's review to the "entire record." They did not address *Fagnan*'s contrary holding. They also identified no limiting principle regarding the scope of a CCA's review. If a CCA's review authority is limitless, then much of the restrictive wording in Article 66(c), UCMJ, would be superfluous. *See Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 837 (1988) (explaining that courts should be "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law"). Accordingly, we believe that *Fagnan* rather than *Erby* should control in this case.

Applying *Fagnan* now, we start by recognizing that the "entire record" contains no information about SOP 310 or the application of the policy to Appellant. Neither the record of

---

[10] Because both the sentence appropriateness and correctness in law determinations require a decision based upon the "entire record," we need not determine whether post-trial confinement conditions fall under one or both provisions.

trial nor the other matters attached to the record of trial mention the policy. Instead, Appellant first raised his claims regarding the policy in the form of an affidavit, with attachments, submitted to the ACCA. Appellant's case also differs from *Erby* because he has not argued that SOP 310 or its application to him violates Article 55, UCMJ, or the Eighth Amendment. Accordingly, under the interpretation of Article 66(c), UCMJ, established in *Fagnan* and now affirmed here, we conclude the ACCA could not have considered this material.

Three important observations about our holding and reasoning require attention. First, our decision today cabins but does not overrule *Erby* or *Pena*, with respect to Article 55, UCMJ, or Eighth Amendment claims. Consistent with the Government's proposal for accommodating the discordant precedents, all we must decide today is that the practice of considering material outside the record should not be expanded beyond the context of Article 55, UCMJ, and the Eighth Amendment. We may decide in a future case whether these holdings with respect to such claims should be overruled, modified, or instead allowed to stand as "aberration[s]" that are "fully entitled to the benefit of stare decisis" because they have become established. *Flood v. Kuhn*, 407 U.S. 258, 282 (1972).

Second, this decision does not overrule, call into question, or otherwise affect *Brennan* or any other decision in the second category of cases described above. Those decisions are distinguishable because they concerned issues raised by materials in the record but not fully resolvable by those materials. Those decisions also could not be easily cabined because they have not been as limited in their subject matter as decisions in the third category of cases, which have concerned only Eighth Amendment and Article 55, UCMJ, post-trial confinement claims. *See Parker*, 36 M.J. at 272 (identifying precedents in the second category of cases that concern a variety of issues).

Third, we note that the parties and the ACCA have discussed a number of competing policy arguments. For example, among other considerations, the majority of the ACCA observed that inmates generally have other venues, such as

the U.S. district courts, for pursuing remedies for prison conditions. *See, e.g., Jessie*, 2018 CCA LEXIS 609, at *18, 2018 WL 6892945, at *7 (citing *Walden v. Bartlett*, 840 F.2d 771, 774–55 (10th Cir. 1988)). The ACCA also reasoned that sentence assessment under Article 66(c), UCMJ, is an imperfect mechanism for addressing such claims, which other federal courts can remedy by awarding damages or issuing injunctions. *Id.* at *18, 2018 WL 6892945, at *7. On the other hand, Appellant points out that resolving such claims at the CCAs is often more convenient than pursuing collateral litigation. A dissenting judge at the ACCA further noted that the CCAs have not been overly burdened in hearing Eighth Amendment and Article 55, UCMJ, claims. *Id.* at *42–43, 2018 WL 6892945, at *18 (Hagler, J., joined by Berger, C.J., dissenting).

We take no position with respect to any of these competing policy arguments. We think policy arguments should not guide our decision in this case because the text of Article 66(c), UCMJ, does not permit the CCAs to consider matters that are outside the entire record. *See Universal Health Servs. v. United States*, 136 S. Ct. 1989, 2002 (2016) (explaining that "policy arguments cannot supersede the clear statutory text"). Policy arguments, of course, may guide Congress and the President in the future if they choose to revise Article 66(c), UCMJ.

### III. Conclusion

We have answered Assigned Issue II in the affirmative by concluding that the ACCA conducted a valid review under Article 66(c), UCMJ, even though it did not consider Appellant's constitutional claims. As a result, we answer Assigned Issue I, which asks whether the ACCA erred by refusing to consider specific evidence of Appellant's confinement conditions, in the negative. We need not answer Assigned Issue III, which concerns the merits of Appellant's constitutional claims, because the documents that Appellant cites to support these claims are outside the record.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, dissenting.

The majority holds that when a Court of Criminal Appeals (CCA) is fulfilling its statutory responsibilities under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c) (2012), and determining whether a sentence is correct in law and fact and should be approved, the CCA is prohibited from allowing the parties to supplement the record except in those tightly circumscribed instances where the appellant raises Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855 (2012), claims. I disagree. In my view, this Court's caselaw authorizes a CCA to supplement the record in additional contexts where the CCA concludes that such a step is necessary in order for it to perform its statutory duties under Article 66(c), UCMJ, in an effective and informed manner. Therefore, I respectfully dissent.

The majority squarely roots its holding in this case on the wording of Article 66(c) and on our decision in *United States v. Fagnan*, 12 C.M.A. 192, 30 C.M.R. 192 (1961). Specifically, the majority first highlights the language in Article 66(c) that states that a CCA must make its sentence appropriateness determination "on the basis of the entire record." The majority then emphasizes that in *Fagnan*, this Court interpreted the phrase "entire record" as meaning only the "record of trial" and "allied papers." 12 C.M.A. at 194, 30 C.M.R. at 194. I view this inordinately restrictive view of this issue as misguided.

To begin with, the reference in Article 66(c), UCMJ, to the CCA making its sentence appropriateness determination "on the basis of the entire record" should be seen as a transparency and due process requirement rather than as a limitation on the powers of the CCA to supplement the record. That is, the purpose of this provision is to ensure that a decision by the CCA is not based on matters *outside* the record and that the parties are informed ahead of time of evidence the CCA will rely upon in reaching its decision. (See *United States v. Holt*, where this Court held that a CCA is precluded from considering "extra-record" materials when making a sentence appropriateness determination. 58 M.J. 227, 232 (C.A.A.F. 2003) (citation omitted) (internal quotation marks omitted).) I see nothing in the language of Article 66(c) that precludes the CCA from allowing the parties to *supplement* the record if

that court deems it necessary in order to perform its statutorily mandated duties, and then basing its sentence appropriateness determination on "the entire record," which would include this supplemental material.

Next, I conclude that the majority's reliance on *Fagnan* as controlling precedent is misplaced. To be clear, if *Fagnan* stood alone as the only case to address this issue, I would likely agree with the majority's conclusion. But as the majority admirably recounts in its own opinion, that is hardly the situation.

For example: In *United States v. Brennan*, 58 M.J. 351 (C.A.A.F. 2003), the appellant sought sentence relief based on her post-trial confinement conditions, and this Court considered the appellant's affidavit on this topic even though it had not been submitted to the convening authority and was not part of "the entire record." In *United States v. Parker*, 36 M.J. 269, 272 (C.M.A. 1993), this Court noted that we have authorized post-trial hearings pursuant to *United States v. DuBay*, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413 (1967), "in a growing miscellany of circumstances where extra-record fact determinations were necessary predicates to resolving appellate questions." In *United States v. Boone*, 49 M.J. 187, 193 (C.A.A.F. 1998), the appellant raised an ineffective assistance of counsel claim, and this Court noted that "there are legitimate and salutary reasons for the now-Court of Criminal Appeals to have the discretion to obtain evidence by affidavit, testimony, stipulation, or a factfinding hearing, as it deems appropriate." In *United States v. Erby*, 54 M.J. 476, 479 (C.A.A.F. 2001), the appellant sought sentence relief based on his post-trial confinement conditions, and this Court remanded the case to the CCA for "whatever factfinding is required … [in order to] review the merits of appellant's claims under Article 66(c), and determine what relief, if any, is appropriate." And in *United States v. Pena*, 64 M.J. 259, 266–67 (C.A.A.F. 2007), the appellant sought sentence relief based on his post-trial confinement conditions, and this Court deemed his "declaration" on this topic as being insufficient not because it was not part of the record that went to the convening authority but because it consisted of mere "generalized statements." *See also United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001). The *Pena* Court stated:

> When an appellant asks us to review the post-trial administration of a sentence, we are typically confronted by issues in which the pertinent facts are not in the record of trial. In such a case, it is particularly important that the appellant provide us with a "clear record" of the facts and circumstances relevant to the claim of legal error.

64 M.J. at 266 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

In reviewing this caselaw which is not consistent with our decision in *Fagnan*, the majority decides to hew to our holding in the latter case. I disagree with this approach for the reasons cited below.

First, *Fagnan*, which was decided nearly sixty years ago, conflicts with more recent precedent. As this Court recently stated in *United States v. Hardy*, "When confronted with conflicting precedents, [this Court] generally follow[s] the most recent decision." 77 M.J. 438, 441 n.5 (C.A.A.F. 2018).

Second, there is not just one case that conflicts with the older *Fagnan* case—there are several. When it comes to a duel of precedents, not only recency but also frequency surely should play a role.

Third, unlike at the time of the *Fagnan* decision, a number of federal circuit courts have now determined that they have the authority to supplement the record on appeal in special circumstances. *See, e.g.*, *United States v. Rothbard*, 851 F.3d 699, 702 (7th Cir. 2017) (supplementing the record to address the reasonableness of the district court's sentence); 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3956.4 (5th ed. 2019). Given this federal civilian practice, the judicial nature of the CCAs would support, not preclude— as suggested by *Fagnan*—supplementation of the record on appeal in appropriate instances. This is especially true in light of the fact that the CCAs are unique appellate courts with "unrivaled statutory powers." *United States v. Kelly*, 77 M.J. 404, 405 (C.A.A.F. 2018). Their "scope of review … differs in significant respect from direct review in the civilian federal appellate courts" to include that a CCA "conducts a de novo review of the sentence under Article 66(c) as part of its responsibility to make an affirmative determination as to sentence appropriateness." *United States v. Roach,* 66 M.J. 410,

412 (C.A.A.F. 2008). If the more limited federal circuit courts have the authority to supplement the record on appeal, then the CCAs' uniquely broad authority under Article 66(c) clearly weighs in favor of also allowing the CCAs to determine when to allow supplementation.

Fourth, unlike in the federal civilian court system, there is "no mechanism set out in the Uniform Code of Military Justice for this Court or the [CCAs] to evaluate … post-conviction claims," and thus *DuBay* hearings—which were adopted more than fifty years ago—have "proved to be a useful tool" in this regard. *United States v. Polk*, 32 M.J. 150, 152–53 (C.M.A. 1991). In other words, the military justice system does not have a procedure in place, such as in the federal civilian court system, where collateral litigation is used to address claims that cannot be resolved on the basis of the material already contained in the record. *DuBay* hearings help to fill that role. This process has a long history in the military, is not unduly burdensome, can provide adequate relief to aggrieved servicemembers in a timely manner under a host of circumstances, and can keep the issue "in house" rather than requiring the servicemember to resort to the civilian legal system to vindicate his or her rights that were allegedly violated by the military.[1] And yet, despite the multitude of cases over more than fifty years where the CCAs and this Court have employed this procedure, the majority explicitly notes that in a future case it may seek to overturn long-standing precedent and thereby further limit an appellant's ability to supplement the record—even in those instances where the alleged violation of rights

---

[1] The majority seems to accept the CCA's claim that civilian federal courts can award damages to military prisoners. ("[T]he majority of the ACCA observed that inmates generally have other venues, such as the U.S. district courts, for pursuing remedies for prison conditions." *See, e.g., Jessie*, 2018 CCA LEXIS 609, at *18, 2018 WL 6892945, at *7 (citing *Walden v. Bartlett*, 840 F.2d 771, 774–55 (10th Cir. 1988))." *United States v. Jessie*, __ M.J. __, __ (14—15) (C.A.A.F. 2020).) However, this claim offers false hope given that the *Feres* doctrine prohibits lawsuits by military prisoners against the federal government. *See Schnitzer v. Harvey*, 389 F.3d 200, 203 (D.C. Cir. 2004) ("Every circuit to consider the issue [of whether and how the *Feres* doctrine applies to military prisoners], however, has found the doctrine to apply without modification.").

rises to constitutional dimensions. Specifically, the majority states:

> We may decide in a future case whether these holdings with respect to such claims [i.e., whether precedents authorizing the supplementation of the record—such as through *DuBay* hearings—in those cases where Article 55, UCMJ, and Eighth Amendment claims are raised,] should be overruled, modified, or instead allowed to stand as "aberration[s]" that are 'fully entitled to the benefit of stare decisis' because they have become established. *Flood v. Kuhn*, 407 U.S. 258, 282 (1972).

*Jessie*, __ M.J. at __ (14) (second alteration in original). This is an ominous pronouncement.[2]

Fifth, the rationale of the majority opinion brings into question the validity of this Court's own rules and practices. Specifically, Article 67(a), UCMJ, 10 U.S.C. § 867(a) (2012), states that this Court "shall review *the record*," but then C.A.A.F. R. 30A of this Court's Rules of Practice and Procedure allows this Court to consider new material on motion from a party for issues that were not raised by the record.[3] (Emphasis added.) It is odd indeed if this Court, which does not have the same factfinding and review authority as a CCA, has the power to supplement the record but a CCA does not.

In light of these factors, I conclude that the majority is mistaken in concluding that the CCA was prohibited from considering the materials submitted by Appellant regarding the conditions of his post-trial confinement. Indeed, in regard to the disposition of the instant case, I would remand the case

---

[2] The majority also states that its decision does not overrule or call into question those decisions that fall within the second category of cases identified in its opinion. However, as my colleague Judge Sparks observes, the logic of the majority opinion would seem to limit the CCAs to the record reviewed by the convening authority even for this second category of cases.

[3] I note two recent examples in which we have permitted supplementation of the record to grant reconsideration to address issues that were not raised by materials in the record. *See United States v. Springer*, 79 M.J. 138 (2019) (summary disposition); *United States v. Barry*, 76 M.J. 407 (C.A.A.F. 2017) (summary disposition).

to the CCA. Pursuant to this remand, I would emphasize that in the course of conducting their Article 66, UCMJ, review, the CCA has broad discretion to permit the parties to supplement the record. Because the majority holds to the contrary, I respectfully dissent.

Judge SPARKS, dissenting.

I agree with the majority's assessment of the three different lines of precedent related to the court of criminal appeals' consideration of materials outside the record as part of an Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c) (2012), sentence appropriateness review. However, like my colleague Judge Ohlson, I am troubled by the decision to cabin off the entire line of precedent constituting the majority's third category, those cases that allow the lower courts to consider material outside the record for a limited class of issues not raised by anything in the record.

*United States v. Fagnan*, 12 C.M.A. 192, 30 C.M.R. 192, 194 (1961), is nearly sixty years old and involves an appellant's request for what is essentially clemency, a reduction of his sentence based on good behavior. I am reluctant to use this as the basis for denying a more liberal interpretation of "the entire record" in cases following in the footsteps of *United States v. Erby,* 54 M.J. 476 (C.A.A.F. 2001), and *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007), which raised serious questions of sentence appropriateness rather than just clemency. The majority is correct that Article 66, UCMJ, instructs the lower courts to review issues "on the basis of the entire record." But it also entrusts the lower court with the weightier responsibility of ensuring an accused's sentence is "correct in law." Confining our review only to the existing record, without exception, would limit the lower court's ability to do this.

Sentence appropriateness is a somewhat fluid issue. It is conceivable that sentencing issues could arise or ripen or come to defense counsel's attention only after the convening authority has acted. To my mind, the courts of criminal appeals are bound, under Article 66, UCMJ, to consider any colorable constitutional claim related to sentence appropriateness even if that requires review of documents outside the record of trial. The line of cases extending from *Erby* and *Pena* should not be considered "aberration[s]." *United States v. Jessie*, __ M.J. __ (14) (C.A.A.F. 2020) (alteration in original) (internal quotation marks omitted) (citation omitted). To the contrary, the lower court's right to consider matters beyond the record to resolve claimed violations of the Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855 (2012), should justifiably extend to the resolution of other credible constitutional claims. Once it has evaluated all the information available to it, the lower court has the discretion to determine

whether the appellant's constitutional rights have been infringed upon and whether the court is in a position to fashion a plausible remedy. The fact that an appellant did not raise a sentencing issue with the military judge or convening authority simply should not bar consideration of a legitimate constitutional claim.

Though the majority opinion is clear about its narrow application, I nonetheless have concerns that, if we rely here upon a literal interpretation of the phrase "on the basis of the entire record," nothing in Article 66, UCMJ, would limit such strict application to only cases involving sentencing review. This Court has frequently reviewed cases from the courts of criminal appeals in which the trial record has been supplemented on appeal. *See*, *United States v. Navarette*, 79 M.J. 123, 125—26 (C.A.A.F. 2019) (as part of a motion for a Rule for Courts-Martial 1203(c)(5) mental health inquiry, the lower court considered the appellant's discharge paperwork following a post-trial hospitalization for psychiatric care); *United States v. Datavs*, 71 M.J. 420, 423 (C.A.A.F. 2012) (in an ineffective assistance of counsel claim, the lower court considered multiple supplemental affidavits and reports relevant to trial defense counsel's performance). If we were to extend the logic of the majority, would not the lower courts be confined to "the entire record" when considering these cases as well?

Given these concerns, I respectfully dissent.